UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JAMES DELLINGER,                    )
                                    )
          Petitioner,               )
                                    )
v.                                  )          No.:   3:09-CV-404
                                    )                 (VARLAN/SHIRLEY)
ROLAND COLSON, Warden,              )
                                    )
          Respondent.               )

## MEMORANDUM OPINION

This case, filed under 28 U.S.C. § 2254, is before the Court for a determination of

whether Petitioner is entitled to equitable tolling. Petitioner's rationale for equitable tolling

of the statute of limitation in § 2244(d) is that he was assured by attorneys at the state

Post-Conviction Defender's Office ("PCDO") that a federal habeas petition would be filed

on his behalf. He relied on those assurances to his detriment because they did not file his

§ 2254 petition. When the instant petition was belatedly submitted on his behalf by other

counsel, it came two years too late.

     To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing

his rights diligently, and (2) that some extraordinary circumstance stood in his way' and

prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (quoting *Pace

v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). For the reasons explained herein, the Court

concludes Petitioner's mental health does not constitute an extraordinary circumstance under

the facts of this case, and because the record needs further development regarding

Petitioner's exercise of due diligence in pursuing his § 2254 federal habeas petition and his claim that one counsel's mental impairment along with counsels' abandonment constitutes a extraordinary circumstance, the matter will be set for a hearing under separate Order.

## I.  Procedural History

Petitioner was convicted by a Sevier County jury of one count of first-degree murder and sentenced to life imprisonment.  Petitioner's sentence and conviction were affirmed on direct appeal,  *State v. Dellinger*, No. 03C01-9403-CR-0090, 1995 WL 406953 (Tenn. Crimp. App. 1995),  and the Tennessee Supreme Court denied permission to appeal on January 22, 1996.  Petitioner next sought state post-conviction relief, which was denied by the trial court.  The Court of Criminal Appeals affirmed the trial court's decision, and the Tennessee Supreme Court denied permission to appeal on October 30, 2006.  *Dellinger v. State*, 2006 WL 1679595 (Tenn. Crim. App. 2006), *perm app. denied* (Tenn. 2006).  This habeas petition followed on September 11, 2009—well outside § 2244's one-year statute of limitations [Doc. 1].

Petitioner contends that the statute of limitations should be tolled because his appointed state post-conviction counsel in his Blount County Death Penalty case assured him a federal habeas petition would be filed in his Sevier County case, but neglected to follow through with that assurance. Petitioner claims he did not know a federal habeas petition had not been filed until notified by the Federal Public Defenders Officer after it was appointed to represent him in his § 2254 death penalty habeas case.  Counsel, appointed in the federal

2

habeas death penalty case on April 10, 2009 (Civil Case Number 3:09-cv-104, Doc. 16), filed the instant habeas petition on September 11, 2009 [Doc. 1].

## II.    Equitable Tolling

Although this federal habeas petition was filed outside the prescribed time limits identified in 28 U.S.C. § 2244(d), the Court has jurisdiction to consider the petition if the equitable tolling doctrine applies. In *Holland v. Florida,* 130 S. Ct. 2549. 2562 (2010), the Supreme Court held that § 2244(d) is subject to equitable tolling only in those rare cases where circumstances beyond a petitioner's control have prevented him from timely filing a habeas petition or timely raising a habeas corpus claim. *See Keenan v. Bagley*, 400 F.3d 417, 420-21 (6th Cir. 2005). The decision as to whether equitable tolling is applicable to an untimely filed § 2254 habeas petition is made on a case-by-case basis, *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002), and the burden to demonstrate that equitable tolling is proper is borne by Petitioner, *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004). To sum up, a petitioner is entitled to equitable tolling only when he "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. at 2562.

*Holland* discussed certain key points to guide a court when rendering an equitable tolling decision. For example, "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline, does not warrant equitable tolling," but professional misconduct, which is sufficiently egregious, may create an extraordinary circumstance. *Holland,* 130 S. Ct. at 2562 (2010) (citing *Irwin v. Dept. of*

3

*Veterans Affairs,* 498 U.S. 89, 96 (1990), and *Lawrence v. Florida*, 549 U.S. 327, 336 (2007)).

The Sixth Circuit has instructed "that mental incompetence or incapacity may provide a basis for equitable tolling." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011). Although the *Ata* Court was referring to a Petitioner's mental incompetence or incapacity, in an earlier case, the Sixth Circuit noted it had recognized, in an employment suit, that an attorney's mental illness may be a basis for equitable tolling, stating that "[d]rug use could clearly impair an attorney's competence to the same extent as mental illness." *Robertson v. Simpson,* 624 F.3d 781, 785 (6th Cir. 2010). More to the point, as the Sixth Circuit noted in *Patterson v. Lafler*, No. 10-1379, 2012 WL 48186, at *4 (6th Cir. Jan. 9, 2012), "[a]ttorney incapacitation or abandonment has been held to rise to the level of an extraordinary circumstance."

## III. Facts

The facts and issues surrounding the timeliness of Petitioner's federal habeas petition in this case are somewhat complex and are gleaned from the uncontroverted affidavits provided to support his equitable tolling claim. As in the *Holland* case, the "extraordinary circumstances" at issue here involves counsels' alleged failure to satisfy professional standards of care. Unlike the *Holland* case, however, Petitioner's counsel suffered from a mental illness. Some historical facts, however, are needed to put this claim into proper perspective.

4

## A. Historical Facts

Petitioner and his co-defendant, Gary Wayne Sutton, were indicted for the murder of Tommy Griffin ("Griffin") in Blount County and the later murder of his sister, Connie Branum ("Branum"), in Sevier County. They were first tried and convicted in the Sevier County case, receiving a life sentence. *State v. Sutton & Dellinger*, No. 03C01-9403-CR-0090, 1995 WL 406953 (Tenn. Crim. App. 1995), *perm. app. denied*, (Jan. 22, 1996). They next were tried and convicted in the Blount County murder, receiving death sentences. *State v. Dellinger*, 79 S.W.3d 458 (Tenn. 2002). The sole aggravating circumstance found by the jury to sentence Petitioner to death in the Blount County case was the conviction in the instant Sevier County case.

## B. Extraordinary Circumstance Facts

At the conclusion of direct review in Petitioner's death penalty case (December 16, 2002), Attorney Don Dawson, the Post-Conviction Defender,[1] accepted the appointment to represent Petitioner in his Blount County state post-conviction case and assigned the case to himself and Catharine Brockenborough [Doc. 9-1 ¶ 6-7].[2] Both attorneys believed and explained to Petitioner that they had a duty to monitor and assist in the Sevier County case because it was inextricably bound to his Blount County case; the Sevier County conviction

---

[1] The PCDO represents capital defendants in state post-conviction litigation and related litigation, such as competence to be forcibly medicated [Doc. 9-1 ¶ 5].

[2] Ms. Brockenborough's first visit with Petitioner was with Mr. Dawson on February 28, 2003, at which time they discussed representing him in both the Blount County and Sevier County cases, without making any distinction as to their roles in the two cases [Doc. 22-2 p. 5].

5

was the sole aggravating factor supporting the death sentence in the Blount County case [Doc. 9-1; Doc. 22-2].

Although the PCDO was denied appointment as co-counsel on his Sevier County state post-conviction case, Petitioner was assured by Ms. Brockenborough that she and Investigator Tammy Kennedy would continue to work with his court-appointed attorney to prepare the case for an evidentiary hearing, and that she considered both his Blount County and Sevier County cases to be her responsibility [Doc. 22-2 ¶ 7]. It appears that only the PCDO attorneys and investigator met with Petitioner regarding his Sevier County case, with one exception. Attorney Brian Delius, Petitioner's court-appointed state post-conviction attorney, met Petitioner in the jail's holding area prior to the post-conviction hearing; a meeting that took place on the day of or the day before his post-conviction hearing in his Sevier County case [Doc. 22-1 ¶ 7]. Petitioner avers he did not know Mr. Delius, the attorney who represented him in his state post-conviction proceeding, and he avers the only time he ever saw his appellate counsel in that case, Attorney Richard Burnette, was when the state post-conviction court appointed him to represent Petitioner on appeal after denying him post-conviction relief [Doc. 9-3]. Petitioner's inquiries about his Sevier County post-conviction appeal were directed to Ms. Brockenborough or Ms. Kennedy. When the inquires were made to Ms. Kennedy, she would assure him that all was well and tell him she would relay his inquiries to the PCDO attorneys [Doc. 9-3].

6

### 1.    Evidence of the PCDO Counsel's Mental Illness

Unbeknownst to Petitioner, but well known to Mr. Dawson, Ms. Kennedy, and the other PCDO employees, Ms. Brockenborough was struggling with mental health issues during the time she represented Petitioner.  From the beginning of her employment in 2001, staff observed that Ms. Brockenborough was unusually disorganized with files intermingled and paperwork from various cases strewn about her desk, under her desk, and throughout her office [Doc. 29-10 ¶ 2].  In addition, she had a history of absenteeism and "a general lack of appropriate productivity." [Doc. 29-9].   In 2003, her problems intensified and steadily worsened until she was terminated in 2007.  An investigator who worked with her avers Ms.Brockenborough was first disorganized in her office, but it soon enveloped her mental faculties as well.  Ms. Brockenborough exhibited more signs of mental health decline, such as a deterioration in her physical appearance, grooming (i.e., emitting a noticeable body odor and her hair appearing greasy and unkept), and her behavior (i.e.,  her work ethic became very erratic and she exhibited odd behavior and abnormal mood swings) [Doc. 29-10 ¶ 2-5]. It was well known in the office, as evidenced by the "exchange[] [of] knowing looks," that Ms. Brockenborough "was not functioning adequately" [Doc. 29-10 ¶ 6].   Ms. Brockenborough's co-workers "recognized the symptoms she demonstrated in the office as signs that she was attempting to cope with a serious mental illness . . . .  For years many of [her co-workers] in the office talked about [their] concern for [their] clients because of her inability to work" and about the negative impact Ms. Brockenborough's mental illness would

have on one of her clients [Doc. 29-10 ¶ 7; Doc. 29-11].  Her co-workers feared the worst [Doc. 29-10 ¶ 7].

### 2.    Mr. Dawson's Knowledge of Counsel's Mental Illness

Mr. Dawson, recognizing Ms. Brockenborough's problems within a year or so of her being hired, wrote a memo on October 20, 2002, addressing issues of her ongoing absenteeism and non-productivity when she was present [Doc. 29-9].  Mr. Dawson reprimanded Ms. Brockenborough for being undependable, specifically her calling and advising that she would be late, then not showing up or calling for two or more days [Doc. 29-9].  Although Mr. Dawson knew Ms. Brockenborough had mental health issues at the time he accepted Petitioner's Blount County case, as evidenced by his October 20, 2002 memo, he nevertheless assigned Ms. Brockenborough the added responsibility of monitoring and assisting in the Sevier County case [Doc. 9-1 ¶ 8].

Mr. Dawson and Ms. Brockenborough discussed filing a habeas petition on behalf of Petitioner in his Sevier County case, if necessary, upon completion of the state appeal [Doc. 9-1 ¶ 12].  Despite Mr. Dawson's on-going attorney-client relationship with Petitioner, and contrary to what Petitioner had been told, a federal petition challenging the Sevier County conviction and sentence was not filed.  Mr. Dawson explains that Petitioner's Sevier County case simply fell through the cracks, given that the PCDO had but four attorneys to handle thirty-six capital cases in post-trial litigation [Doc. 29-17 ¶ 19].  Inexplicably, after Mr. Dawson was informed by Ms. Brockenborough that a federal habeas petition in the Sevier County case was not filed within the statute of limitations, he took no steps whatsoever to

8

double check his mentally-ill employee's calculation or to remedy the situation. And significantly, no one informed Petitioner that a petition had not been filed within the statute of limitations or advised him that he must file one *pro se* [Doc. 9-1 ¶ 17-18; Doc. 29-17]. Instead, without providing any detail, Mr. Dawson vaguely avers "[i]t is my understanding that [Petitioner] was not informed until well after the statute of limitations has [sic] run that, contrary to his understanding, a federal petition challenging his Sevier County conviction had not been filed." [Doc. 9-1 ¶ 19]. Petitioner's affidavit supports Mr. Dawson's affidavit in that Petitioner did not know a federal habeas petition had not been filed in his Sevier County case until 2009, when the Federal Public Defenders Officer notified him of the situation [Doc. 9-3 ¶ 10].

### 3. Ms. Brockenborough's Affidavit

Ms. Brockenborough admits she suffered from mental health issues during the time she represented Petitioner in his Blount and Sevier County cases and that she repeatedly reassured Petitioner, prior to December 29, 2006, that the PCDO would not abandon him and would take care of his Sevier County federal filing [Doc. 22-2 ¶ 18]. In her later affidavit, however, Ms. Brockenborough avers she had several conversations with Mr. Dawson regarding filing Petitioner's federal habeas petition in his Sevier County case, and Mr. Dawson indicated he would take care of finding someone to continue representing Petitioner on that case, or if no attorney was found, the PCDO would prepare a petition for Petitioner to file *pro se*. Ms. Brockenborough avers Mr. Dawson again made those assurances when

9

Ms. Brockenborough notified him that Mr. Burnette would not continue as counsel in federal court, and she again made those assurance to Petitioner. [Doc. 37-1 ¶ 14, 17, 18].

Petitioner avers that, the day after he received the letter from Mr. Burnette telling him he had lost his state appeal in the Sevier County case (on or about October 31, 2006), he called Ms. Brockenborough to inquire about filing in federal court and she assured him they "would not leave me lawyerless and that she would make sure my case was not dropped." [Doc. 9-3 ¶ 6-8].[3]

Nevertheless, Ms. Brockenborough avers she recalculated the statute of limitations for filing the instant habeas petition in February of 2007 and determined she had missed the filing deadline.[4] She went to Mr. Dawson's office, notified him of the error, and left under the impression Mr. Dawson would inform Petitioner of the error [Doc. 37-1 ¶ 19].

---

[3] Mr. Burnette's letter advised Petitioner that the Tennessee Supreme Court denied his application for permission to appeal, that his representation of Petitioner had concluded, that Petitioner may wish to seek relief in federal court without delay, but Mr. Burnette would not be representing him in any federal case [Doc. 9-2].

[4] Ms. Brockenborough avers that, upon recalculating the statute of limitations, she discovered she had made an error in her initial calculation and the deadline for filing Petitioner's federal habeas petition in this case had lapsed [Doc. 22-2]. However, the one year statute of limitations for filing Petitioner's federal habeas petition did not expire prior to February of 2007, and none of the numerous affidavits and documents filed with the Court provide any mathematical calculations nor indicate the expiration date of the statute, as calculated by Ms. Brockenborough. As discussed later in this opinion, the Court has calculated that the one year statute of limitation for filing Petitioner's federal habeas petition expired on April 30, 2007, more than two months after Ms. Brockenborough left her position, but during the time in which Mr. Dawson and the PCDO were still representing Petitioner in his death penalty state post-conviction case. Both parties agree with this calculation.

#### 4. Investigator Tammy Kennedy's Affidavit

Ms. Kennedy, the investigator with the PCDO's office assigned to Petitioner's Blount County case, investigated both Petitioner's Blount and Sevier County cases because the conviction from Sevier County was the sole aggravating circumstance used in the Blount County Case to get the death sentence and because proof of both homicides was presented in each trial [Doc. 22-1 ¶ 1-2]. Ms. Kennedy was, for the most part, Petitioner's primary contact with the PCDO [Doc. 22-1 ¶ 4-5]. Ms. Kennedy investigated the Sevier County case and Ms. Brockenborough drafted the amended post-conviction petition in that case, which was signed by Mr. Delius. Both Ms. Kennedy and Ms. Brockenborough were present with Petitioner at every court appearance in Sevier County during his post-conviction proceedings, and Ms. Brockenborough sat at counsel table with Mr. Delius [Doc. 22-1 ¶ 7].

During the latter part of 2006, Petitioner asked Ms. Kennedy "what was going to happen with his Sevier County case[,]" and she told him she would ask Ms. Brockenborough about it. When Ms. Kennedy spoke with her, Ms. Brockenborough said she had told Petitioner she would handle the filing of his Sevier County federal habeas petition but she had failed to do so. They also discussed the situation with Mr. Dawson [Doc. 22-1 ¶ 10]. According to Ms. Kennedy, it was the PCDO's policy when something of such a serious nature had to be related to a client for the investigator to accompany the attorney on such a visit. Ms. Kennedy never attended such a meeting with Petitioner nor is she aware of anyone from the PCDO ever notifying Petitioner of the missed statute of limitations [Doc. 22-1 ¶ 11-12].

### C. Due Diligence Facts

Petitioner contends that his reliance on the PCDO and due diligence were reasonable when considered together with his mental disability. Although Petitioner has submitted new psychological reports, the Court takes judicial notice of the psychological facts from the state court record in Petitioner's Blount County case (*Dellinger v. Colson*, Civil Case Number 3:09-cv-104), which is pending before this Court. *See Ata v. Scutt*, 662 F.3d 736, 742 (6th Cir. 2011) (A district court is not required to hold a hearing to determine if a petitioner is entitled to equitable tolling "if the state court record refutes the applicant's factual allegations or otherwise precludes habeas relief . . . ." (internal punctuation and citation omitted)).

Contrary to Petitioner's new psychological evidence, the state court record does not reflect that he is intellectually disabled. Rather, the state court record reflects Petitioner, whose IQ is consistently in the borderline to lower end of the low average range of intelligence, possesses less well developed verbal skills and is deficient in cognitive, emotional, and interpersonal skills but "[n]ot to the degree where he's mentally retarded, by any means, but limitations [are] there." *Dellinger v. Colson*, 3:09-cv-104 [Doc. 24, Addendum 4, Vol. 7, pp. 412-16].

## IV. Analysis

### A. Expiration of Petitioner's Statute of Limitations

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), effective on April 24, 1996, state prisoners seeking habeas relief under 28 U.S.C. § 2254 are subject to a one-year statute of limitations for filing § 2254 petitions. Those whose convictions

became final prior to that date, as did Petitioner's, were granted one year from April 24, 1996, in which to file a federal habeas petition, subject to the statute being tolled during the time in "which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending[.]" 28 U.S.C. § 2244(d)(2). If a petition is not filed within the time limit, it is untimely absent application of the equitable tolling doctrine.

Because Petitioner's case became final prior to the effective date of AEDPA, the one-year statute of limitations began to run on April 25, 1996. Petitioner filed his state post-conviction petition on October 24, 1996, after one hundred and eighty-three days had lapsed.[5] Thus, there were one hundred and eighty-two days remaining on the habeas statute of limitations. The statute was tolled from October 24, 1996, until October 30, 2006, when the Tennessee Supreme Court denied permission to appeal the denial of post-conviction relief. *Dellinger v. State*, No. E2004-07068-CCA-R3-PC, 2006 WL 1679595 (Tenn. Crim. App. June 19, 2006), *perm. app. denied*, (Oct. 30, 2006). Thus, the habeas statute of limitations resumed running on October 31, 2006, and the remaining one hundred and eighty-two days expired on April 30, 2007.

---

[5] Title 28 U.S.C. § 2244(d)(2) provides the following:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner did not seek federal habeas relief until September 11, 2009, more than two years after his federal limitations period had expired. Accordingly, absent application of the equitable tolling doctrine, his federal habeas petition is time-barred.

**B.        Applicable Law**

As noted earlier in this memorandum, *Holland* holds that the one-year limitations period will be tolled for a petitioner who can demonstrate "that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. at 2562. As in *Holland*, the "extraordinary circumstance" at issue in this case involves the attorneys' failure to satisfy professional standards of care.

**C.        Respondent's Arguments**

Respondent contends Petitioner is not entitled to equitable tolling for various reasons, two of which are that the PCDO was merely an advisor to Petitioner and that, at any rate, counsel's conduct amounts to nothing more than a garden variety claim of excusable neglect, which does not warrant equitable tolling. *See Irwin v. Dept. of Veterans Affairs,* 498 U.S. 89, 96 (1990). Moreover, Respondent argues, Petitioner has not pled, much less shown that counsel's omission involves active malfeasance or mental impairment; has not shown conduct on the part of counsel goes beyond a mere miscalculated statute of limitations; and, what is more, has not shown that he himself exercised due diligence in this matter [Doc. 36].

Respondent however, has not addressed Petitioner's claim that his own mental disability is itself an extraordinary circumstance. Because that claim can be resolved fairly quickly, the Court addresses it first.

### 1.     Petitioner's Mental Disability as an Extraordinary Circumstance

Petitioner maintains two extraordinary circumstances exist to excuse his failure to comply with the AEDPA's statute of limitations—the first of which is his mental disability. Petitioner's argument concerning the disability is multi-faceted—maintaining first that he has an intellectual disability, then suggesting that his intellectual disability qualifies as a mental disability, and next arguing that this mental disability, in and of itself, constitutes an extraordinary circumstance that caused his failure to timely file his federal habeas petition in this case. The Court disagrees. Petitioner's submissions demonstrate he was well aware that the habeas petition needed to be filed in this case and that he took appropriate steps to make sure it was filed, including a prompt telephone call to Ms. Brockenborough upon receiving notice that his state post-conviction proceedings were over, so as "to make sure she was going to file [his] appeal in federal court" [Doc. 9-3 ¶ 7].

It is true "that a petitioner's mental incompetence, which prevents the timely filing of a habeas petition is an extraordinary circumstance that may equitably toll AEDPA's one-year statute of limitations." *Ata v. Scutt*, 662 F.3d 736, 741 (6th Cir. 2011). Although mental impairment does not *per se* toll the AEDPA limitations period, *Bolarinwa v. Williams,* 593 F.3d 226, 231 (2nd Cir. 2010); *Hunter v. Ferrell*, 587 F.3d 1304, 1309 (11th Cir. 2009), it may do so, but only if a petitioner establishes "a causual link between the mental condition

15

and untimely filing[.]" *Ata v. Scutt*, 662 F.3d at 742. Thus, "[t]o obtain equitable tolling of AEDPA's statute of limitations on the basis of mental incompetence, a petitioner must demonstrate that (1) he is mentally incompetent and (2) his mental incompetence caused his failure to comply with AEDPA's statute of limitations." *Id.*

The question thus becomes whether Petitioner has made the requisite showing of "mental incompetence" to constitute an extraordinary circumstance. Petitioner avers "I received a letter from Richard Burnett [sic] telling me that I had lost my appeal in the Sevier County case. Another inmate read that letter to me, because I do not read. The day after I received Mr. Burnett's [sic] letter, I called the Office of the Post-Conviction Defender and talked to Ms. Brockenborough to make sure she was going to file my appeal in federal court." [Doc. 9-3 ¶ 6-7]. Whether on his own initiative or based on communications with counsel made possible by the inmate who read Mr. Burnette's letter to him, Petitioner understood he had to file for federal habeas relief, and furthermore, that he had to do so "without delay" [Doc. 9-2 ¶ 7]. The record shows that he desired to pursue habeas relief and that, regardless of any alleged intellectual disability, he took steps—both prior to and during the running of the limitation period—to pursue such relief by having a federal habeas petition filed on his behalf in his Sevier County case.

In addition, Petitioner inquired with the investigator as to "what was going to happen to his Sevier County case[,]" during the late fall or early winter of 2006, and he had discussions with Ms. Brockenborough that a federal habeas petition in his Sevier County case needed to be filed as she "repeatedly promised [Petitioner] that a federal petition would be

16

appropriately filed in his Sevier County case." [Doc. 22-1 ¶ 10, 17]. Consequently, there is no evidence showing a causal link between Petitioner's intellectual deficits and the belated filing of this instant § 2254 petition. Indeed, the evidence demonstrates Petitioner attempted to comply with AEDPA's statute of limitations by contacting counsel to have her file his federal petition.

Accordingly, Petitioner has not shown his alleged intellectual disability rendered him unable to file his federal habeas petition timely. The Court therefore finds that his claimed mental disability is not an extraordinary circumstance that prevented him from timely filing his federal habeas petition.

### 2.    Advisor to Petitioner

Respondent argues that the PCDO was no more than an informal advisor to Petitioner in relation to his Sevier County case [Doc. 36]. In addition, Respondent argues Petitioner has not provided any authority applying equitable tolling to a case where the attorney who committed error did not actually represent the petitioner or where the attorney is legally prohibited from doing so.[6] Indeed, Petitioner provided no legal authority, whatsoever, to support his argument that it was appropriate for him to consider Ms. Brockenborough and the PCDO as his counsel in the Sevier County case [Doc. 29 pp. 4-8]. In addition, on the unique circumstances of this case, the Court's research has revealed no cases directly on

---

[6] Respondent makes the latter argument because Mr. Dawson averred the PCDO's "statutory authorization permits work in federal court only if no state funds are used for the representation[.]" [Doc. 29-17 ¶ 15].

point. However, the Court's research has revealed cases that provide some guidance for determining whether an attorney-client relationship exists.

Respondent cited to *Keckler v. Dann*, No. 3:08-CV-170, 2009 WL 2614966 (N.D. Ohio Aug. 25, 2009), as support for his contention that the PCDO was no more than an informal advisor to Petitioner in relation to his Sevier County case. The *Kecker* case is distinguishable because there, the state court had found as a matter of fact that Keckler did not hire his trial counsel to represent him on appeal—a finding which the district court presumed correct, as required by AEDPA. *Id.* at *4. Another difference is that Keckler's trial counsel submitted a sworn affidavit stating he was not retained to serve as appellate counsel, whereas in Petitioner's case, counsel concede that they intended to file the federal habeas petition, and not only that, but also that they led Petitioner to believe they would do so [Doc. 22-2 ¶ 5]. Thus, Respondent's reliance on *Keckler* is misplaced.

In addition, Respondent argues that extending the narrow tolling allowance to counsel who simply are advisors could easily lead to abuse by petitioner's who could easily circumvent limitations in every case by claiming a false belief that some individual with whom they had an informal advisory relationship would file a federal petition on their behalf. The Court agrees with this argument, so long as counsel denies and there is no evidence of an attorney-client relationship. Here, however, Ms. Brockenborough avers she led Petitioner to believe she would represent him, prepare a petition for him to file *pro se,* or secure other counsel for him.

Respondent supports his argument that the PCDO were merely advisors by pointing out that the Sevier County Court refused to appoint the PCDO to represent Petitioner in his Sevier County post-conviction proceedings. Though it is true that the Sevier County Court refused to appoint the PCDO to represent Petitioner in that case, that alone, does not determine whether the PCDO was merely an advisor or whether an attorney-client relationship existed with Petitioner. Notably, Respondent fails to address whether the PCDO's actions created an attorney-client relationship or whether those actions led Petitioner, who intellectually functions at a level below 67% of the population and has an educational level between that of a first and third grader, to reasonably believe they were going represent him or ensure his federal habeas petition was timely filed, as Petitioner argues.

In determining whether an attorney-client relationship was formed, courts "focus on what a party in the given circumstances would *reasonably* have inferred because in legal theory the attorney-client relationship can be formed . . . *only by contract,* express or implied." *Sky Valley Ltd. P'ship v. ATX Sky Valley, Ltd*., 150 F.R.D. 648, 651 (N.D. Cal. 1993) (emphasis in original). "For there to have been an attorney-client relationship, the parties need not have executed a formal contract . . . . Nor is the existence of a relationship dependent upon the payment of fees." *Bratech Indus., Inc. v. Int'l Baking Co,., Inc.,* 910 F. Supp. 388, 393 (E. D. Tenn. 1996). Rather, "a party must show that (1) it submitted confidential information to a lawyer and (2) it did so with the reasonable belief that the lawyer was acting as the party's attorney." *Id.* (citation omitted).

19

The Court acknowledges that this is an unusual case and set of circumstances, and that its research failed to reveal a case on point, but the record reflects, based on counsels' averments, that Petitioner may have been led to believe that they would represent him in federal court or find other counsel to handle the case. The fact that the PCDO was not appointed in the state case or retained, or apparently was not permitted by statute to represent him, does not demonstrate there was no attorney-client relationship, as the test for determining whether an attorney-client relationship exists is a subjective one and hinges on the client's belief that he is consulting the lawyer in his professional capacity with the intention of seeking professional legal assistance. *Thompson v. Karr*, 182 F.3d 918 (6th Cir. 1999), *available at* 1999 WL 519297, *5 ("The test [for determining whether an attorney-client relationship exists] is essentially whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interest of the putative client.") (internal punctuation and citation omitted).

Petitioner's submissions, however, do not indicate whether he submitted confidential information to the PCDO in relation to his Sevier County federal habeas petition and whether he, in fact, believed the PCDO were actually acting as his attorneys in relation to his Sevier County federal habeas petition. Nevertheless, Petitioner has alleged sufficient specific facts and allegations regarding whether an attorney-client relationship existed between him and Ms. Brockenborough and the PCDO to require further inquiry in an evidentiary hearing.

### 3. Due Diligence

Petitioner maintains he pursued his rights with due diligence given his intellectual disability. Due diligence does not require "maximum feasible diligence," but rather, "[t]he diligence required for equitable tolling purposes is reasonable diligence." *Holland v. Florida,* 130 S. Ct. at 2564. Petitioner has the burden of demonstrating his mental disability prevented him from pursuing his rights diligently.

In addition to the proof in the state court record that Petitioner is intellectually low functioning, Petitioner submitted affidavits from other mental health providers. Petitioner submitted an affidavit from Dr. Dale Watson who avers Petitioner "has an Intellectual Disability (Mental Retardation)[,]" but irrespective of that diagnosis, avers Petitioner's "deficits precluded him from acting on his own to represent his own interests in court. He is functionally illiterate, has at least a moderate degree of brain dysfunction, impaired language skills, marked attention deficits, significant verbal memory deficits, significantly impaired problem solving skills and thinks concretely. This combination of deficits made him entirely dependent upon counsel to represent adequately his interests." [Doc. 29-1 p. 32 ¶ 6-7].

Petitioner also submitted the affidavit of Dr. Greenspan, a psychologist who avers, to a reasonable degree of scientific certainty, that Petitioner was "incapable, given his lawyers' repeated assurances, of questioning or evaluating their ability to protect his legal interests" [Doc. 29-2]. Dr. Murray, a forensic psychologist, who had no direct contact with Petitioner, avers that due to his multiple cognitive and intellectual deficits, Petitioner was

21

"incapable of taking the necessary action to monitor . . . the filing of the petition by counsel[.]" [Doc. 29-3 ¶ 9].

In light of these expert affidavits (although they fail to explain their conclusions in relation to Petitioner's ability to function in the free world, as he worked, owned property, and had a family), and the fact Petitioner is illiterate and has only academically achieved somewhere between a first and third grade level, the Court concludes Petitioner has alleged sufficient specific facts and allegations regarding the due diligence issue to require further development in an evidentiary hearing.

### 4. Extraordinary Circumstance

As previously explained, at the conclusion of his Sevier County state post-conviction case, Petitioner contacted Ms. Brockenborough to make sure she was going to file an "appeal in federal court." [Doc. 9-3 ¶ 7]. According to Petitioner, Ms. Brockenborough told him "she would not leave [him] lawyerless and that she would make sure [his] case was not dropped." [Doc. 9-3 ¶ 8]. Ms. Brockenborough did not, however, notify Petitioner of the psychological problems she was experiencing that were arguably preventing her from performing her job.

The Sixth Circuit has recognized that "[a]ttorney incapacitation or abandonment has been held to rise to the level of an extraordinary circumstance." *Patterson v. Lafler*, 2012 WL 48186, *4 (citing *Robertson v. Simpson*, 624 F.3d 781, 785 (6th Cir. 2010)), a case the Sixth Circuit remanded  for an evidentiary hearing to enable petitioner to prove counsel's drug use affected his ability to file a timely habeas petition).

22

Importantly, Ms. Brockenborough avers that during the fall of 2006 her long-term clinical depression undermined her medications' effectiveness. In addition, the stress of her workload and profound grief over the unexpected death of her father severely compromised her ability to perform her duties at work; her memories of that time period are not completely clear [Doc. 22-2 ¶ 11]. Although she attempted to work on some days, on other days she was unable to function. Even when she managed to be present at the office, she was unable to concentrate or focus or perform her "tasks which were [her] duty to perform as counsel of record for [her] clients[.]" [Doc. 22-2 ¶ 11].[7]

Ms. Brockenborough avers that although she does not specifically recall whether she and Petitioner discussed his Sevier County case at their last meeting on December 29, 2006, at that time she believed Mr Dawson was either going to locate counsel to file Petitioner's federal habeas petition or that someone at the PCDO would draft a petition for Petitioner to file. Further, she avers that if they discussed the Sevier County case she "would have continued to reassure [Petitioner] that he could trust the PCDO to handle that matter for him." Mr. Brockenborough believes she told him that another lawyer would be assigned to continue the PCDO's representation of him. However, since her replacement had not been hired, she did not tell him who that person would be, but she had repeatedly promised Petitioner that a federal petition would be appropriately filed in his Sevier County case; that

---

[7] The Court has no reason to doubt that counsel's representations are consistent with her obligations under Federal Rule of Civil Procedure 11. Additionally, the Court has no reason to doubt the representations made by Ms. Brockenborough's colleagues or her mental health experts in their affidavits.

the PCDO would not abandon him; and that the PCDO would take care of his Sevier County federal filing [Doc. 22-2 ¶17-18].

Despite those repeated assurances, however, Ms. Brockenborough avers in early February she recalculated Petitioner's statute of limitations and discovered she had made an error in her initial calculation and they had missed the deadline for filing of the habeas petition. As previously stated, Ms. Brockenborough was mistaken, as the statute of limitations, in fact, had not run at that time and did not expire until April 30, 2007. Nevertheless, Ms. Brockenborough met with Mr. Dawson and notified him of the missed deadline, but never notified Petitioner of the missed deadline. Inexplicably, Mr. Dawson did not recalculate the deadline or notify Petitioner of the situation, even though he continued to represent him in his Blount County case.

At first blush, it appears counsel's failure to file the habeas petition was the result of a simple "miscalculation" of the deadline [Doc. 22-2]. However, the record before the Court suggests the situation is not that simple. During the time Ms. Brockenborough was representing Petitioner, she was experiencing psychological problems. Ms. Brockenborough was treated by Dr. Amanda G. Sparks-Bushnell from August 27, 2001, and was continuing treatment as of December 9, 2010 [Doc. 29-5]. Dr. Sparks-Bushnell avers that although she initially diagnosed counsel's psychiatric condition as Major Depressive Disorder, recurrent, moderate with Generalized Anxiety Disorder, in 2007, she modified her diagnosis based upon additional information and observation and now believes counsel has always suffered from Bi-Polar Disorder, Type II (DSM-IV-TR).

24

The doctor further avers that during the fall of 2006 (the time period at issue here), Ms. Brockenborough was not psychologically stable. Although Ms. Brockenborough saw the doctor on November 17, 2006, and reported that she was able to work and function, Dr. Sparks-Bushnell avers she has subsequently determined that Ms. Brockenborough is "a master of self-deception—and is therefore not a reliable source of information concerning her level of functioning. She is desperate to please others and, as a result, overstates her level of functioning in an effort to meet expectations and to gain approval." [Doc. 29-5 ¶ 7]. Over the course of 2007, Dr. Sparks-Bushnell observed the unraveling of counsel's mental health and she changed her diagnosis to Bi-Polar II and began medication to treat those symptoms [Doc. 29-5]. The doctor avers that in late 2006 Ms. Brockenborough was unable to function and that it is her "professional opinion that Ms. Brockenborough was not competent to function as counsel of record from late 2006 through 2007." [Doc. 29-5]. Dr. Sparks-Bushnell avers that she does "not believe that Ms. Brockenborough was capable of representing anyone's interests, even her own, [during the fall of 2006 and spring of 2007]." [Doc. 29-5 ¶ 9]. In addition, Ms. Julia J. Tate, an attorney and clinical social worker, who provided psychotherapy to Ms. Brockenborough from August 28, 2009, until December 20, 2009, submitted an affidavit which supports Dr. Sparks-Bushnell's conclusion, as Ms. Tate does not believe Ms. Brockenborough had been capable of practicing law for several years, including the period from late 2006 through 2007 [Doc. 29-6]. Taking the affidavits at face value, as well as those of her co-workers who interacted with her on a daily basis, it appears Ms. Brockenborough's mental impairment may have prevented her from correctly calculating

25

the statute of limitations and making sure a federal habeas petition was filed in Petitioner's Sevier County case.

In light of these uncontroverted affidavits, the Court concludes Petitioner has presented sufficient facts and allegations regarding this alleged extraordinary circumstance to warrant an evidentiary hearing.

## V.     Conclusion

For the reasons stated in this memorandum opinion, the Court finds Petitioner's mental deficiencies do not constitute an extraordinary circumstance in this case and relief based on this claim will be **DENIED**.  Petitioner, however, has presented sufficient facts and allegations to warrant an evidentiary hearing on his claim that he is entitled to equitable tolling because he diligently pursued his remedies and counsel's mental illness and abandonment by the PCDO constitutes an extraordinary circumstance.  The Court hereby **REFERS** this matter to Magistrate Judge C. Clifford Shirley, Jr., so that he may conduct an evidentiary hearing and prepare a report and recommendation.  The Court will **RESERVE** entering a Judgment Order, including ruling on a Certificate of Appealabilty, pending its receipt of the report and recommendation and any objections thereto.

IT IS SO ORDERED.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE