UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| JAMES DELLINGER, | ) | |
| | ) | |
|     *Petitioner*, | ) | |
| | ) | |
| v. | ) | No.: 3:09-CV-404-TAV-CCS |
| | ) | |
| BRUCE WESTBROOKS, WARDEN,[1] | ) | |
| Riverbend Maximum Security Institution, | ) | |
| | ) | |
|     *Respondent*. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the Report and Recommendation of Magistrate Judge C. Clifford Shirley, Jr. entered on January 30, 2015 ("R&R") [Doc. 83]. The R&R addresses Petitioner's entitlement to equitable tolling of the statute of limitations in 28 U.S.C. § 2244(d). Magistrate Judge Shirley held an evidentiary hearing on the issue on April 7, 2014, and April 8, 2014 [Doc. 73, 74]. The parties then submitted post-hearing briefs [Docs. 80, 81]. Magistrate Judge Shirley followed with the R&R, recommending that the Court grant Petitioner's motion for equitable tolling and allow Petitioner's § 2254 petition for writ of habeas corpus to be deemed timely filed [Doc. 83]. Respondent filed an objection to the R&R [Doc. 89], and Petitioner submitted a response in opposition to Respondent's opposition [Doc. 93].

---

[1] Warden Bruce Westbrooks replaced Ricky Bell as Warden of Riverbend Maximum Security Institution. Accordingly, the Clerk is **DIRECTED** to change the name of the Respondent to Bruce Westbrooks on the Court's CM/ECF docket sheet.

**I. Background[2]**

On February 24, 1993, Petitioner was convicted by a Sevier County jury, along with co-defendant Gary Wayne Sutton, of the first-degree murder of Connie Branam. Petitioner was sentenced to life imprisonment. Petitioner's sentence and conviction were affirmed on direct appeal, *see State v. Dellinger*, No. 03C01-9403-CR-0090, 1995 WL 406953 (Tenn. Crim. App. July 11, 1995), and the Tennessee Supreme Court denied permission to appeal on January 22, 1996.

Petitioner next filed a petition for state post-conviction relief, and was appointed local attorney, Bryan Delius, as counsel. The Office of the Post-Conviction Defender ("PCDO"), which was representing Petitioner on a separate but somewhat related conviction, sought to be appointed to Petitioner's Sevier County post-conviction case, but was denied and only allowed to serve as elbow counsel. The trial court denied Petitioner's petition for state post-conviction relief, and the Tennessee Court of Criminal Appeals affirmed the appeal. *Dellinger v. State*, No. E2004-010-68-CCA-R3-PC, 2006 WL 1679595 (Tenn. Crim. App. June 19, 2006). The Tennessee Supreme Court denied permission to appeal on October 30, 2006.

Following the conclusion of Petitioner's state post-conviction process, his post-conviction appeal attorney, Richard Burnette, sent Petitioner a letter dated November 6, 2006, which was copied to Catherine Brockenborough of the PCDO, informing Petitioner that his state post-conviction process was completed and that Petitioner would need to contact the PCDO

---

[2] Magistrate Judge Shirley's findings of fact [Doc. 83 pp. 4–13] are supported by the evidence. Although Respondent objects to the comprehensiveness of relevant facts outlined in the R&R, the Court finds that Magistrate Judge Shirley's findings adequately reflect the factual background. To the extent that Respondent's objections implicate a fact found in, or absent from, the R&R, the Court has considered the dispute in the context of its analysis of Petitioner's objections.

immediately to seek help in challenging his conviction in the federal system [Evidentiary Hearing Exhibit 15; Doc. 29-22]. After receiving Mr. Burnette's letter, Petitioner contacted the PCDO and was told that the attorneys there would assist him in filing his Sevier County federal habeas petition.

In March 2009, Petitioner received a notice informing him that he owed a $5.00 filing fee for his federal habeas petition. Petitioner then contacted the Federal Defender's Office to inquire which case he owed the fee on, which is when he was first informed that his Sevier County petition had never been filed [Doc. 1]. During the time between contacting the PCDO concerning filing his federal petition and receiving notification that it had not been filed in March 2009, the PCDO continued to represent Petitioner on his other case and met with him frequently to discuss the status of his case. The PCDO never informed Petitioner that his Sevier County federal habeas petition had not been filed.

Petitioner filed his federal habeas petition on September 11, 2009, claiming that he is entitled to equitable tolling of the one-year statute of limitations under the Antiterrorism and Effective Death Penalty Act ("AEDPA") [Doc. 1]. Petitioner argues that the PCDO's assurances that the petition would be filed, followed by their failure to file the petition and inform Petitioner that it had not been filed constitute extraordinary circumstances that warrant equitable tolling [*Id.*]. Petitioner further claimed that his mental retardation and his counsel's mental illness also constituted extraordinary circumstances entitling him to equitable tolling [Doc. 29].

The Court previously found that Petitioner's mental deficiencies do not constitute an extraordinary circumstance, but nonetheless found that Petitioner was entitled to an evidentiary hearing based on his claims of counsel's mental illness and abandonment by the PCDO [Doc.

3

49]. The Court referred the case to Magistrate Judge C. Clifford Shirley to conduct an evidentiary hearing and prepare an R&R [*Id*. at 26].

In the R&R, the magistrate judge agrees with Petitioner, finding that Petitioner's abandonment by the PCDO constituted an extraordinary circumstance sufficient to allow equitable tolling, and that Petitioner had diligently pursued his rights to the extent reasonable under circumstances [Doc. 83].

## II.     Standard of Review

As required by 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure, the Court has undertaken a *de novo* review of those portions of the R&R to which Respondent has objected, considering the R&R, the parties' underlying briefs, Respondent's objection, and Petitioner's response to the objection, all in the light of relevant law. The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

## III.    Analysis

Respondent's objections to the R&R are threefold: (1) he objects to the magistrate judge's statement of relevant facts; (2) he argues that no extraordinary circumstance existed before April 2007, nor during the period between March 2009 and September 2009; and (3) he argues that Petitioner did not exercise due diligence before March 2009, nor during the period between March 2009 and September 2009 [Doc. 89]. Respondent also appears to object to the magistrate judge's finding that an attorney-client relationship existed between Petitioner and the PCDO with respect to this Sevier County case [Doc. 89 p. 14 n.1]. The Court will address Respondent's objections in turn, except that the Court will first address the issue of whether an attorney-client relationship existed with regard to Petitioner's Sevier County case.

4

### A. Attorney-Client Relationship

Magistrate Judge Shirley determined that an attorney-client relationship existed between the PCDO and Petitioner with respect to his Sevier County case because Petitioner called the PCDO specifically seeking representation to pursue a federal habeas petition in his Sevier County case, Ms. Brockenborough assured Petitioner that the PCDO would ensure that the petition would be filed, and Petitioner relied on the representations made by the PCDO that they would file a federal habeas petition on his behalf [Doc. 83 p. 22].

The "evidence necessary to support a determination as to whether an attorney-client relationship exists may vary with the circumstances." *Thompson v. Karr*, No. 98-3544, 1999 WL 519297, at *5 (6th Cir. July 15, 1999) (citation omitted). However, "[t]he test is essentially 'whether the putative client reasonably believed that the relationship existed and that the attorney would therefore advance the interests of the putative client.'" *Id*. The Sixth Circuit has also looked at the existence of an attorney-client relationship outside of a contractual agreement in *Grace v. Center for Auto Safety*, 72 F.3d 1236 (6th Cir. 1996). The Court held that "the focus is on the *client's* subjective belief that he is consulting a lawyer in the lawyer's professional capacity and [whether] his intent is to seek professional legal advice." *Id*. at 1242 (citation and internal quotation marks omitted). In finding the existence of an attorney-client relationship, the Court looked at the fact that the client regularly sought and obtained legal advice from the attorneys, the client relied on the attorneys' assistance and counsel, and the defendant never refuted that the client had a subjective belief that they were consulting with the attorneys in a professional capacity intending to seek professional legal advice. *Id*.

Here, the PCDO already represented Petitioner in his Blount County case; as such, an attorney-client relationship already existed between Petitioner and the PCDO with respect to that

5

case. Furthermore, the evidence shows that Petitioner called the PCDO after he received a letter from his state post-conviction appellate counsel, seeking legal assistance with pursuing a federal habeas petition in his Sevier County case. Ms. Brockenborough testified that she talked to Petitioner following his receipt of the letter from the state post-conviction appellate counsel and that she told him that the PCDO would oversee the process of filing his federal habeas, either handling it themselves or finding another lawyer and working with whomever they would find [Doc. 77 p. 109]. Mr. Dawson also testified that it was his understanding that either he or Ms. Brockenborough assured Petitioner that they would either handle his Sevier County federal habeas or find someone to file it for him [Doc. 77 p. 227]. Even further, the record shows that Petitioner relied on the PCDO to handle his Sevier County federal habeas petition. While Respondent argues that the PCDO was statutorily estopped from handling Petitioner's federal habeas case, Respondent has not refuted that the PCDO represented to Petitioner that they would handle his case, and that he relied on them to do so.

Like the magistrate judge, and upon *de novo* review, the Court finds that the evidence in the record, the factors reviewed above, and Sixth Circuit jurisprudence weigh in favor of finding that an attorney-client relationship existed between Petitioner and the PCDO with respect to Petitioner's Sevier County federal habeas petition.

      **B.**    **Relevant Facts**

Respondent next objects to the magistrate judge's statement of relevant facts [Doc. 89 pp. 2–11]. Respondent has presented his objections based on the testimonies of the different witnesses [*id*.], and the Court will address each objection likewise. As an initial matter, the Court notes that integral to the magistrate judge's role in conducting an evidentiary hearing and issuing a report and recommendation is determining the facts based on the evidence presented at

the hearing. The Court notes the difficulty presented by the task of culling important facts from voluminous records and recognizes that the mere fact that a particular fact has not been recounted does not, by itself, indicate that it was not considered. With this in mind, the Court will turn to Respondent's objections.

### 1. Petitioner's Testimony

Respondent raises a number of objections to the magistrate judge's summary of Petitioner's testimony, including that the magistrate judge: (1) failed to note that Petitioner's letter from his state post-conviction attorney advised him to seek federal relief "without delay" [*id*. at 2]; (2) mistook Petitioner's statement that he thought his lawyers were doing everything they could on his cases to refer to the attorneys at the PCDO instead of his state post-conviction attorneys, Richard Burnette and Bryan Delius [*id*.]; (3) failed to note parts of Petitioner's testimony that reflected that he understood his legal proceedings and, particularly, the difference between his Blount County and Sevier County cases [*id*. at 2–3]; (4) failed to note that Petitioner had the ability to seek information about his cases [*id*. at 3]; (5) failed to note that Petitioner once took the initiative to file a complaint about his post-conviction trial counsel, Bryan Delius [*id*.]; (6) failed to note testimony indicating that Petitioner knew a federal habeas petition needed to be filed in his Sevier County case [*id*. at 3–4]; (7) failed to note Petitioner's testimony that an inmate could have prepared something to file in the federal court concerning his federal petition [*id*.]; and (8) failed to consider testimony about the multi-step process involved in calling out of this prison as an indication that Petitioner can take initiative [*id*.].

The magistrate judge found that Petitioner received a letter from Mr. Burnette informing him that his Sevier County post-conviction proceedings had concluded, and as a result, called Ms. Brockenborough about pursuing a federal habeas petition [Doc. 83 p. 4]. Respondent's

7

objection that the magistrate judge failed to include "without delay" is without consequence as there is no evidence that Petitioner waited any significant amount of time before contacting the PCDO, nor does it appear that the magistrate judge's decision is predicated on a lapse of time between Petitioner's receipt of the letter and his call to the PCDO. To the contrary, it appears that Petitioner did in fact follow Mr. Burnette's advice, which fostered his dependence on the PCDO to file his federal petition.

With respect to Respondent's objection that the magistrate judge mistook Petitioner's statement about attorneys Burnette and Delius to refer to the PCDO, the Court agrees with Respondent. But this distinction does not change the outcome of the magistrate judge's analysis. The record in its entirety supports Petitioner's reasonable belief that he was being represented by the PCDO for the purpose of filing his Sevier County federal habeas petition. The Court's review of the record and the magistrate judge's statement of relevant facts does not indicate that Petitioner did not know that he had two separate cases or that Petitioner did not know that a federal habeas petition needed to be filed in his Sevier County case. Rather, as the magistrate judge noted and concluded, because the PCDO attorneys had always addressed Petitioner's cases in unison, and continued to do so even after failing to file the federal habeas petition, Petitioner did not have any reason to believe that the petition had not been filed [*See* Doc. 83 p. 6]. The magistrate judge also acknowledged that Petitioner could have had someone prepare the motion on his behalf; the R&R explicitly refers to this portion of Petitioner's testimony but also credited Petitioner's statement that he did not do this because he thought it was being taken care of by his lawyers [*Id*. at 7].

8

### 2. Testimony of Catherine Brockenborough and her Mental Health Experts

Respondent's next objection to the statement of relevant facts in the R&R argues that the magistrate judge failed to note that Ms. Brockenborough was able to competently represent Petitioner. Respondent points out that at many times, Ms. Brockenborough was the only counsel that routinely met with Petitioner and that she had prepared motions for him, including his state post-conviction petition [Doc. 89 p. 5]. Respondent also objects to the omission that Ms. Brockenborough intended to prepare Petitioner's federal habeas petition, and that this intent was unabated until she calculated the statute of limitations and concluded that the deadline had passed [*Id*. at 6]. Furthermore, Respondent objects to the magistrate judge's failure to mention that Ms. Brockenborough testified that her mental illness "ebbed and flowed" and was exacerbated by a high case load; therefore, she was not necessarily impaired at the time she would have needed to prepare Petitioner's federal habeas petition [*Id*. at 5]. Respondent also objects to the magistrate judge's summary of Ms. Brockenborough's mental health experts, stating that their testimony that Ms. Brockenborough reported that she was responding positively to her medication was omitted [*Id*. at 7].

The magistrate judge's summation of Ms. Brockenborough's testimony does not discount the fact that she met with Petitioner on many occasions, prepared documents on his behalf, and intended to prepare Petitioner's federal habeas petition. In fact, the magistrate judge's conclusion depends on these facts to find the existence of an attorney-client relationship between Petitioner and the attorneys at the PCDO, and to find that Petitioner was justified in relying on the PCDO to prepare his federal habeas petition in his case [Doc. 83 p. 8]. While Respondent is correct in his objection that Ms. Brockenborough's mental illness "ebbed and flowed," and that she reported periods of good work product, Respondent fails to take into consideration the

9

Case 3:09-cv-00404-TAV-CCS   Document 94   Filed 11/30/15   Page 9 of 19   PageID #: 1933

testimony of Ms. Brockenborough's mental health experts. Dr. Sparks-Bushnell testified that Ms. Brockenborough's illness caused her to have limited insight, and this combined with her self-deception and desire to please people made her a poor judge of her productivity level [Evidentiary Hearing Exhibit 19 pp. 44–45]. This applies, as well, to Respondent's argument that Ms. Brockenborough reported that her mood was good, her concentration was better, and that she was more productive at work.

### 3. Don Dawson's Testimony

Respondent next objects to the summary of Don Dawson's testimony presented in the R&R. Particularly, Respondent argues that the magistrate judge failed to note Mr. Dawson's testimony that he considered Ms. Brockenborough's request to handle Petitioner's federal habeas petition as having obviated the need for him to find alternate counsel; that he considered their missing the statute of limitation deadline as "just an error"; that he never told Petitioner that the petition had been filed, and he would not have lied if he had been asked directly about it; and that the PCDO's practice was to take documents to Petitioner to review with him because Petitioner could not read [Doc. 89 p. 8].

The magistrate judge found that the PCDO abandoned Petitioner in the filing of his Sevier Count federal habeas first by failing to file the petition, and then by concealing the fact that it was never filed [Doc. 83 p. 26]. Respondent's argument that Mr. Dawson would not have lied to Petitioner if he had asked fails to consider the testimony that the usual practice in Petitioner's representation by the PCDO was to intertwine the discussion of both his Sevier County and Blount County cases, so that Petitioner never had any reason to ask specifically about one case or the other, and Mr. Dawson would not have expected him to. The Court also agrees with the magistrate judge's determination that Mr. Dawson's decision to hand over

10

Petitioner's case to Ms. Brockenborough as well as his cavalier attitude towards finding out that she had missed the filing deadline was more than mere negligence, given Ms. Brockenborough's mental health history, and Mr. Dawson's knowledge of these issues [*Id*. at 24 n.4].

### 4. Testimony of Petitioner's Mental Health Experts

Respondent further objects to the magistrate judge's summary of the testimonies of Drs. Murray, Greenspan, and Watson, arguing that the magistrate judge failed to include a number of statements that would indicate that Petitioner did not always accept exploitation and was capable of standing up for himself, was not completely naive and gullible, and that his illiteracy would not have prevented him from having an inmate prepare his petition on his behalf or calling his lawyers to make sure it had been prepared and filed [Doc. 89 p. 8–10].

The Court agrees with Respondent that the evidence presented indicates that Petitioner is sometimes able to take actions on his behalf, and has in fact done so in the past. However, the Court notes that the magistrate judge, in making his recommendation, was required to take in the entirety of the evidence presented. The evidence presented at the evidentiary hearing indicates that when Petitioner took initiative on his behalf during his legal proceedings was after his state post-conviction attorney, Mr. Delius, had failed to communicate with him during the almost two years that he had been appointed to represent Petitioner [Evidentiary Hearing Exhibit 21 p. 42]. This situation is markedly different from Petitioner's relationship with the PCDO where he was meeting constantly with someone from the PCDO. In addition, it is also important to note that when Petitioner spoke up about Attorney Delius, he was told by the judge to trust his lawyer and that these things take time [*Id*. at 43]. Furthermore, as the Court has previously found, the magistrate judge acknowledged that Petitioner could have asked another inmate to prepare his

11

petition, but because he did had no reason to know that the PCDO had not filed it, he had no reason to do so.

As such, the totality of the evidence supports the magistrate judge's conclusion, as well as the diagnosis of Petitioner's mental health experts, that Petitioner's illiteracy and mental health deficiencies made him extremely dependent on counsel to represent his interests.

### 5. Tammy Kennedy's Testimony

Finally, Respondent objects to the magistrate judge's omission of PCDO investigator Tammy Kennedy's testimony from the R&R [Doc. 89 p. 11]. Respondent specifically points to Ms. Kennedy's statement that she had a conversation with Petitioner in late fall or early winter of 2006 during which Petitioner asked what was going to happen with his Sevier County case [*Id*.].

The majority of Ms. Kennedy's affidavit provides testimony that the magistrate judge already considered from the testimony of other witnesses—i.e., that representatives from the PCDO constantly visited Petitioner, that both his Sevier Court and Blount County cases were investigated and discussed in unison, and that Petitioner was illiterate [*See* Doc. 22-1]. In addition to this information, Ms. Kennedy also recalled Petitioner specifically asking her about his Sevier County federal petition [*Id*. at 2]. While this is contrary to Petitioner's contention that he never specifically had to ask about his individual cases, the evidence indicates that this conversation must have taken place shortly after Petitioner received Mr. Burnette's letter, dated November 6, 2006 [Evidentiary Hearing Exhibit 15]. It does not appear unusual to the Court that Petitioner could have deviated from his usual practice and asked specifically about his Sevier County federal habeas petition because it had just been brought to his attention. Furthermore, the Court notes that Ms. Kennedy's affidavit went on to say that to her recollection, no one in the

12

PCDO told Petitioner about the missed filing deadline even though they continued to represent him in his Blount County case [Doc. 22-1 p. 2–3].

### C. Extraordinary Circumstance

Respondent next objects to the magistrate judge's finding of the extraordinary circumstances necessary to support equitable tolling during two specific periods of time [Doc. 86]. First, Respondent argues that there was no extraordinary circumstance during the period that Petitioner's state post-conviction appeal proceedings ended and when the statute of limitations actually expired in April 2007 [*Id.* at 11]. Second, Respondent argues that no extraordinary circumstance existed between March 20 or March 23, 2009, and September 11, 2009 [*Id.*].

#### 1. Period between November 2006 and April 2007

Respondent argues that the PCDO did not abandon Petitioner before the statute of limitation actually expired because Ms. Brockenborough intended to and had a financial incentive to work on Petitioner's Sevier County federal habeas petition before she erroneously calculated the statute of limitations to have expired [*Id.* at 12]. Respondent further argues that Ms. Brockenborough's mental illness did not constitute an extraordinary circumstance to allow tolling of the limitations period during this time [*Id.* at 14]. Particularly, Respondent argues that there is no evidence that Ms. Brockenborough's mental illness actually impaired her ability to correctly calculate the statute of limitations deadline for filing Petitioner's federal habeas petition or prevented her from timely filing the petition [*Id.* at 14–15].

The Court finds that it does not need to reach the merits of this objection as Respondent has waived this argument. The Sixth Circuit has held that "while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed,

13

absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998)); *see also Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996) ("[I]ssues raised for the first time in the objections to magistrate judge's report and recommendation are deemed waived.").

Respondent's pre-trial brief [Doc. 69], post-trial brief [Doc. 80], and arguments during the evidentiary hearing [Docs. 77, 78] make no reference to the argument that Petitioner is not entitled to equitable tolling during the time leading up to the date his statute of limitation actually expired in April 2007. Rather, Respondent merely argued that Petitioner was not entitled to equitable tolling because there was no extraordinary circumstance and no due diligence generally, and in particular during the six-month period beginning March 20 or March 23, 2009, after Petitioner was notified by the Federal Defender's Office that his Sevier County federal habeas petition had not been filed [Doc. 80]. Accordingly, Respondent's failure to raise his claim that Petitioner was also not entitled to equitable tolling during this specific period of time before the magistrate judge constitutes a waiver.

### 2. Period between March 20 or March 23, 2009 and September 11, 2009

Respondent next objects to the finding that an extraordinary circumstance existed during the period beginning March 20 or March 23, 2009, after Petitioner found out that his Sevier County federal habeas petition had not been filed, and ending September 11, 2009, when the petition was actually filed [Doc. 89]. The Court agrees with Respondent. The magistrate judge found that "Petitioner's initial reason to believe his attorneys were, in fact, not representing him in his Sevier County case was not until March 2009 when his federal defenders notified him"

14

[Doc. 83 p. 32]. Petitioner has not alleged any facts that could lead the Court to find that any further extraordinary circumstance existed between this date and when he filed his petition on September 11, 2009. However, having found that Respondent's argument challenging Petitioner's entitlement to equitable tolling for any period of time leading up to when the statute of limitation for filing his petition actually expired in April 2007 has been waived, the Court finds that Petitioner had sufficient time left on his one-year AEDPA clock to make his filing timely.[3]

### D. Due Diligence

Respondent's final objection to the magistrate judge's R&R argues that Petitioner did not exercise due diligence leading up to March 2009 [Doc. 89].[4] Particularly, Respondent argues that Petitioner was not prevented from filing his petition and would have been able to do so had he specifically asked about the status of his Sevier County case [*Id*. at 20]. Respondent further argues that Petitioner's limited intellectual abilities does not excuse his lack of diligence because, in the past, he has displayed the ability to get his state post-conviction petition filed, to complain about his previous attorney, and he also had the intellectual capability to discern that he had two separate cases which required separate federal filings [*Id*. at 21].

---

[3] Petitioner and Respondent have both presented differing mathematical possibilities to denote the date Petitioner's AEDPA statute of limitations actually expired. Respondent's calculation is based on Petitioner having 182 days left on his clock after his state post-conviction appeals proceedings concluded, with his petition having been due no later than April 30, 2007. Petitioner's calculation is based on 186 days, with his petition due no later than April 27, 2007. The Court finds that regardless of which computation it adopts, Petitioner's petition, which was filed between 172 and 175 days after any extraordinary circumstance ceased to exist, fell within the number of days remaining on Petitioner's AEDPA statute of limitations clock.

[4] Respondent also argues that Petitioner did not exercise due diligence between March 2009, and when he eventually filed his petition in September 2009. However, because the Court has previously found that Petitioner is not entitled to equitable tolling for this period, the Court need not address this argument.

15

In *Holland v. Florida*, the Supreme Court held that a petitioner seeking to equitably toll the AEDPA statute of limitations must demonstrate that he has been pursuing his rights diligently and that some extraordinary circumstance stood in his way and prevented timely filing. 560 U.S. 631, 649 (2010). The Supreme Court further explained that "[t]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id*. at 653 (internal citations and quotation marks omitted). Absent any specific guidance from the Sixth Circuit, the Court agrees with the magistrate judge's adoption of the Second Circuit's factors in *Baldayaque v. United States*, 338 F.3d 145 (2d Cir. 2003), as well as the magistrate judge's determination that the appropriate standard of reasonable diligence necessarily takes into account the circumstances of a particular case [*See* Doc. 83 pp. 28–29].

In *Bladayaque*, the Second Circuit suggested that appropriate factors to consider in determining diligence include: (1) petitioner's efforts at the earliest possible time to secure counsel for the purpose of filing a habeas petition; (2) petitioner's lack of funds to consult another lawyer; (3) counsel's assurances that everything had been done that could be done; (4) counsel's failure to communicate directly with Petitioner at any time; (5) petitioner's lack of education and inability to speak or write; and (6) petitioner's incarceration and lack of direct access to other forms of legal assistance. *Id*. at 153. Respondent objects to the magistrate judge's conclusion that all the applicable *Baldayaque* factors weigh in favor of Petitioner [Doc. 89 p. 19]. The Court notes that not all of the factors enumerated above find application in Petitioner's case; however, the Court agrees with the magistrate judge that, of those that do, their analyses weigh in favor of Petitioner.

Respondent appears to take issue with the magistrate judge's determination that Petitioner's incarceration and illiteracy presented obstacles preventing him from filing a timely

16

petition, that counsel failed to communicate with Petitioner, and that counsel assured Petitioner that everything was proceeding as they should with his cases [Doc. 89 pp. 19–25].  Respondent is correct as it does not appear that Petitioner's incarceration or his inability to read and write particularly impeded his ability to file his petition.  Petitioner testified that he could have gotten a fellow inmate to file one for him, had he known that he needed to.  However, these factors cannot be examined in isolation from one another, nor in isolation from the other circumstances of the case.  As the Supreme Court has held, in exercising its equity powers, a court must make its determination on a case by case basis.  *Holland*, 560 U.S. at 649–50.  Although Petitioner was in constant communication with the PCDO, Mr. Dawson, Ms. Brockenborough, and Ms. Kennedy all testified that none of them ever told Petitioner that his petition had not been filed.  This case does not mirror the facts in *Baldayaque* where counsel communicated only with the petitioner's wife and reverend; however, the considerations are similar.  Here, the PCDO in essence ceased to communicate with Petitioner about the status of his Sevier County case.  This lack of communication was further compounded by the fact that the PCDO continued to visit with Petitioner and tell him generally that his case was proceeding as it should.

Furthermore, while the magistrate judge did not conclude that Petitioner meets the definition of mental retardation under the Tennessee Code [*see* Doc. 83 p. 14 n.1], the magistrate judge nonetheless took into account Petitioner's illiteracy and intellectual limitations.  The Court finds that this was appropriate.  The evidence presented at the evidentiary hearing indicates that Petitioner has a limited ability to take initiative and be proactive [Doc. 83 pp. 10–13].  Respondent relies on a number of instances where Petitioner was able to act on his own behalf.  The Court, however, notes that majority of these instances were precipitated by some action or inaction.  For instance, Petitioner's filing of a complaint against his state post-conviction

17

attorney was not until he had not received communication from Mr. Delius for over two years [Evidentiary Hearing Exhibit 21 p.42]; Petitioner's call to the PCDO and his inquiry to Ms. Kennedy about the filing of his Sevier County federal habeas petition was prompted by receiving Mr. Burnette's letter [Doc. 22-1 p.2]; and Petitioner's call to the Federal Defenders concerning which case his $5.00 filing fee was owed on was only done after he received notice of the deficiency.

The Court must also take into consideration, as the magistrate judge did, that Petitioner has had a history of long periods of inactivity in his cases. Relying on *Miller v. Collins*, 405 F.3d 491, 496 (6th Cir. 2002), the magistrate judge found that it was not unreasonable for Petitioner to not have inquired about the status of his case following the end of his Sevier County state post-conviction and discussion with the PCDO concerning filing his petition, but before he learned that his federal habeas petition had not been filed [Doc. 83 p. 31]. Respondent objects to the reliance on *Miller* arguing that Petitioner was not waiting on a court to make a ruling on his case; rather, he already knew that his state case was completed and that he needed to file a federal petition without delay [Doc. 89 p. 24]. Respondent's argument here, however, fails to consider that Petitioner did not know and had no reason to know that his petition had not been filed. Based on what he had been led to believe by the PCDO, his cases were proceeding smoothly. Petitioner cannot also be faulted for failing to act, given that his past experiences demonstrated that he could go for two or more years without having any progress on his cases, and that his last attempt to challenge a similar delay with Attorney Delius resulted in a reprimand from his state court judge. As such, the Court finds that Petitioner acted as diligently as he could considering his past experience, his intellect, and the nature of his relationship with the PCDO.

18

**IV.     Conclusion**

After reviewing the record in this case, including the R&R, the objections, the evidence presented at the evidentiary hearing, the underlying briefs, and the relevant law, the Court determines that the magistrate judge fully and appropriately considered the arguments in support of the motions before it.  Accordingly, the Court agrees with the magistrate judge and the Respondent's objections [Doc. 89] are **OVERRULED**.  The Court ACCEPTS **IN WHOLE** the R&R [Doc. 83].  Petitioner's motion seeking equitable tolling of the one-year AEDPA statute of limitations [Doc. 29] is hereby **GRANTED**.  This case is **REFERRED** to the Honorable C. Clifford Shirley, Jr., United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A), for determination of filing deadlines.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE