UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| JAMES DELLINGER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No.: 3:09-cv-404-TAV-DCP |
| | ) |
| TONY MAYS, Warden, | ) |
| | ) |
| Respondent.[1] | ) |

# MEMORANDUM OPINION AND ORDER

This case is before the Court upon an amended petition for habeas corpus under 28 U.S.C. § 2254 brought by James Dellinger ("Petitioner"). Presently pending is Petitioner's motion for discovery [Doc. 113]. Respondent has filed a response in opposition [Doc. 115], to which Petitioner has replied [Doc. 121]. Because Petitioner has failed to establish good cause for any of his discovery requests, his motion for discovery [Doc. 113] will be **DENIED.**

## I. BACKGROUND

On February 24, 1993, Petitioner, along with codefendant Gary Wayne Sutton, was convicted by a Sevier County jury of premeditated first-degree murder in the death of Connie Branam. Petitioner was sentenced to life imprisonment. His conviction and sentence were affirmed on direct appeal, *see State v. Dellinger*, No. 03C01-9403-CR-0090,

---

[1] Tony Mays is now the Warden at Riverbend Maximum Security Institution. The Clerk is **DIRECTED** to substitute Tony Mays as Respondent in this matter. Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts.

1995 WL 406953 (Tenn. Crim. App. July 11, 1995), and the Tennessee Supreme Court denied permission to appeal.

Petitioner filed a petition for state post-conviction relief which the trial court denied. The Tennessee Court of Criminal Appeals affirmed the trial court's denial of that petition, *Dellinger v. State*, No. E2004-010-68-CCA-R3-PC, 2006 WL 1679595 (Tenn. Crim. App. June 19, 2006), and the Tennessee Supreme Court again denied permission to appeal.

Petitioner filed a federal habeas petition on September 11, 2009. Although the petition was untimely under 28 U.S.C. § 2244(d), Magistrate Judge C. Clifford Shirley, following an evidentiary hearing, concluded that equitable tolling should be applied in this case [Doc. 83], and the Court accepted in whole his recommendation [Doc. 88]. On April 27, 2016, Petitioner filed the pending amended habeas petition raising a plethora of grounds for relief, including, *inter alia*, multiple claims of ineffective assistance of counsel and numerous claims alleging the concealment of exculpatory evidence [Doc. 104].

Petitioner now seeks discovery of physical evidence and law enforcement records, as well as leave to serve a deposition subpoena under Federal Rule of Civil of Procedure 45, for the purpose of "investigating and establishing violations of his constitutional rights" as alleged in his amended petition [Doc. 113 p. 1]. In particular, he requests ballistics evidence and tire tread impressions; records from various law enforcement agencies involving investigations into a 1990 assault on Mike Vaughn, a retaliatory attack committed by Lester Ray Johnson, and any records indicating Branam was cooperating

with law enforcement; and, finally, leave to take the deposition of Billy Griffin [Doc. 113 p. 3].

Respondent opposes the motion. As an initial matter, Respondent contends that discovery should not be permitted in an attempt to develop facts related to any claims that were adjudicated on the merits in state court because the Court's review of such claims will be confined to the state court record [*Id*. pp. 5, 6, 11].[2] Although Respondent has raised a credible argument on this point, the Court need not wade into these procedural waters at this time because, substantively, Petitioner has failed to establish good cause for the requested information.

## II.     APPLICABLE LAW

Unlike a normal civil case, there is no entitlement to discovery in habeas proceedings as a matter of ordinary course. *Bracy v. Gramley*, 520 U.S. 899, 908–09 (1997). Rather, a district court has discretion to grant discovery in a habeas case upon a

---

[2] In *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Supreme Court held that when a claim has been adjudicated on the merits in state court, a federal habeas court's "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." 563 U.S. at 181–82. Thus, in reviewing claims under that section, a federal habeas court may consider only the record as it existed before the state court and, under most circumstances, cannot consider any new evidence when deciding such claims. *Id*. at 182 ("It would be contrary to . . . purpose [of § 2254(d)(1)] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*"). Although Respondent argues for a blanket denial of discovery requests related to any claim adjudicated on the merits in state court in light of *Pinholster*, some courts have permitted *limited* discovery in federal habeas proceedings on claims that have been adjudicated on the merits in state court where some specific factual basis has been alleged demonstrating good cause for such discovery. *See, e.g.*, *Pike v. Johnson*, 2013 WL 2457718 (E.D. Tenn. June 6, 2013) (while *Pinholster* limits the scope of review under § 2254(d)(1), "it says nothing about the court's discretion to allow discovery" upon a showing of good cause). Petitioner has made no such showing here on any of his requests.

fact specific showing of good cause under Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts. *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001).

Rule 6(a) of the Rules Governing Section 2254 Cases provides: "A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." A party requesting discovery must provide "reasons for the request . . . and must specify any requested documents." Rule 6(b), Rules Governing Section 2254 Cases in the United States District Courts.

The Supreme Court has held that "good cause" under Rule 6(a) is met "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief . . . ." *Bracy*, 520 U.S. at 908–09 (quoting *Harris v. Nelson*, 394 U.S. 286, 295 (1969)). The burden of demonstrating the materiality of information requested under Rule 6(a) is on the moving party. *See Stanford*, 266 F.3d at 460.

Before addressing whether Petitioner is entitled to discovery under Rule 6, the Court first must identify the "essential elements" of the claims he hopes to be able to establish if the facts are fully developed. *See Bracy*, 520 U.S. at 905 (citing *United States v. Armstrong*, 517 U.S. 456, 468 (1996)). The Court then must determine whether the facts alleged, if proven, may be the basis for relief. *Id.* If so, discovery should be granted under Rule 6(a). Conversely, discovery requests based on allegations that would not develop facts that may entitle a petitioner to relief, even if the facts would be found in his favor,

4

should not be granted. *See Stanford*, 266 F.3d at 460. And requests that amount to a "fishing expedition masquerading as discovery" also should not be granted. *Id*.

III. ANALYSIS

A. Physical Evidence

Petitioner has requested discovery of the following physical evidence: (1) a rifle shell casing found at the crime scene in Sevier County, along with Petitioner's rifle; (2) tire tread impressions and photographs of Petitioner's truck and tires; and (3) the two .12 gauge shotgun hulls found at the crime scene in Blount County.[3] Petitioner avers generally that this physical evidence is related to his constitutional claims of ineffective assistance of counsel for failure to investigate and that it also may provide a factual basis to excuse any procedural default of those claims.

1. Shell Casings and Rifle

Petitioner first seeks access to the .303 rifle shell casing found at the Sevier County crime scene, along with Petitioner's rifle, in order to conduct ballistics testing to prove that the shell had not been fired from that rifle. He contends that ballistics testing is necessary to support his claim that counsel was ineffective for failing to obtain an independent ballistics expert [Doc. 104 ¶ 3.4.1.1.1] and for failing to challenge the ballistics testimony presented by the State at trial [Doc. 104 ¶ 3.4.3.2.3]. He further alleges that the testing

---

[3] Petitioner and Sutton also were convicted of the premeditated first-degree murder of Tommy Griffin in Blount County. Petitioner was sentenced to death on that conviction. Tommy Griffin was the brother of Connie Branam.

may develop proof of his actual innocence by "ruling him out" as Branam's killer, which would excuse any procedural default of his ineffective assistance of counsel claim.

The Court concludes that Petitioner has not established good cause for discovery of the shell and rifle. Petitioner has set forth nothing but a conclusory allegation that new ballistics testing will *prove* that the shell did not come from Petitioner's rifle. In fact, he has provided no factual allegations which would provide any reason to believe that it will. A ballistics test was already conducted, the results of which led the state's expert to conclude that the shell <u>did</u> come from that rifle. Petitioner has made no specific allegation that the state's expert manipulated the ballistics test results or testified falsely. Instead, he merely speculates that retesting will yield a different result. Petitioner's conclusory allegation that new testing definitively will show that the shell did not come from the rifle, without more specific factual allegations to lend credence to that speculation, is insufficient to establish good cause under Rule 6. *See Cornwell v. Bradshaw*, 559 F.3d 398, 410 (6th Cir. 2009) ("[c]onclusory allegations are not enough to warrant discovery under Rule 6; the petitioner must set forth specific allegations of fact") (citation omitted).

Because Petitioner has failed to state specific, non-conclusory allegations which would create any reason to believe that, through access to the shells and rifle from the Sevier County crime scene, Petitioner may be able to develop sufficient evidence to entitle him to relief, either on his ineffective assistance of counsel claim or his claim of actual innocence as a ground to excuse procedural default, this discovery request will be **DENIED**.

## 2. Tire Treads

Petitioner next seeks the tire tread impressions that law enforcement collected at the Sevier County crime scene and detailed photographs taken of Petitioner's truck and tires. He contends that this discovery request will allow him to demonstrate that the tire tread marks at the scene did not match Petitioner's tries, "eliminating him as a suspect" in Branam's murder. He further alleges that the testing may develop proof of his actual innocence by "ruling him out" as Branam's killer, which would excuse any procedural default of his ineffective assistance of counsel claim.

Again, Petitioner has set forth nothing but conclusory allegations that (1) the tire tread marks at the scene do not match his truck and (2) that such a result will eliminate him as a suspect in Branam's murder. At trial, Detective Larry McMann testified that the two tire tracks that were lifted at the crime scene "did not reveal enough to identify the make or model of the vehicle." *Dellinger v. State*, No. E2004-01068-CCA-R3-PC, 2006 WL 1679595, at *12 (Tenn. Crim. App. June 9, 2016). Petitioner offers nothing but mere speculation that another investigation of the tread impressions will result in more conclusive results. Again, he offers no suggestion that the prior testing was insufficient or otherwise flawed nor that Detective McMann was untruthful in his testimony. Petitioner's conclusory allegation that new testing definitively will show that the tire tracks lifted from the scene do not match the tires of his truck, without more specific factual allegations to lend credence to that speculation, is insufficient to establish good cause under Rule 6. *See Cornwell*, 559 F.3d at 410.

7

Because Petitioner has failed to state specific, non-conclusory allegations which would create any reason to believe that, through access to the tire tread impressions and photographs of Petitioner's truck and tires, Petitioner may be able to develop sufficient evidence to entitle him to relief, either on his ineffective assistance of counsel claim or his claim of actual innocence as a ground to excuse procedural default, this discovery request will be **DENIED**.

### 3. Shotgun Hulls

Petitioner also seeks access to two shotgun hulls found at the Blount County crime scene in order to conduct ballistics testing to "rule out" Petitioner as the person who killed Tommy Griffin. He contends that ballistics testing is necessary to support his claim that the ballistics evidence presented at trial was false and that counsel was ineffective in failing to investigate and properly cross-examine prosecution witnesses about the origin of the hulls [Doc. 104 ¶¶ 3.4.1.8, 3.4.3.2.3]. He further alleges that the testing may provide a factual basis to excuse any procedural default.

This request fails for the same reasons as the previous two, as Petitioner again has set forth nothing but conclusory allegations that the results of previous ballistics testing were false and that new testing will rule him out as a suspect in Tommy Griffin's murder.[4] He has not provided any reason to believe that the results of retesting will be different,

---

[4] A jury also found Petitioner guilty of the premeditated first degree murder of Tommy Griffin beyond a reasonable doubt.

rather he merely speculates that they will be. Such speculative allegations are insufficient to establish good cause. *See Cornwell*, 559 F.3d at 410.

Because Petitioner has failed to state specific, non-conclusory allegations which would create any reason to believe that through additional ballistics testing of the shotgun hulls recovered from the Blount County crime scene Petitioner may be able to develop sufficient evidence to entitle him to relief, either on his ineffective assistance of counsel claim or his claim of actual innocence as a ground to excuse procedural default, this discovery request will be **DENIED**.

**B.     Documents**

Petitioner also seeks discovery of records from various law enforcement agencies involving investigations into a 1990 assault on Mike Vaughn, a retaliatory attack committed by Lester Ray Johnson, and any records indicating Branam was cooperating with law enforcement. In his amended § 2254 petition, Petitioner has raised claims alleging that the state denied him of his right to a fair trial and due process by actively concealing information to which he was entitled [Doc. 104 ¶ 3.3], and that the prosecution withheld exculpatory evidence and information regarding other suspects in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), *Napue v. Illinois*, 360 U.S. 264 (1959), and their progeny [Doc. 104 ¶ 3.31].

Through discovery of these records, Petitioner hopes to develop facts in support of his theory that Branam was killed by someone else, either in connection with the

investigation and prosecution of Lester Johnson, or because of her cooperation with law enforcement in investigating drug activity in Sevier County.

### 1. Records relating to Mike Vaughan and Lester Ray Johnson

Plaintiff 's first discovery request for documents broadly seeks: (1) the entire file of the Sevier County Sheriff's Department relating to the investigation of a September 1990 attack on Mike Vaughn; (2) all North Carolina State Bureau of Investigation records of the investigation into Lester "Festus" Johnson's September 1991 retaliatory attack on Tina Hartman for her part in the Mike Vaughn assault; and (3) any notes of the Jackson County judge who presided over Lester "Festus" Johnson's trial as to witness lists presented by the parties and any notes regarding threats made by Johnson against witnesses or others.

In support, Petitioner avers that Vaughn was violently attacked by several men and at least one woman. Vaughn reported that Tina Hartman cut his throat during the attack [Doc. 113-10]. Vaughn's cousin, Lester "Festus" Johnson later was tried on attempted homicide and rape charges in North Carolina related to his retaliatory attack on Hartman. *Id.* During state post-conviction proceedings in Petitioner's Blount County case (Case No. 3:09-CV-104), Petitioner's counsel located in the file of the Blount County Sheriff's Department a March 4, 1993, report of a phone call from North Carolina Bureau of Investigation Agent Sam Gregory containing information that: (1) many of the state's witnesses against Johnson had received death threats; (2) Hartman had purportedly offered the testimony of Tommy Griffin and Connie Branam as character witnesses on her behalf; and (3) that Hartman's family had received calls threatening that they would be the next

people harmed after Branam and Tommy Griffin. *Id*. Petitioner also avers that other reports indicate that Tommy Griffin was present and participated in the attack on Vaughn, and that Johnson was released from jail in Cherokee, North Carolina, around 1 p.m. on the day that Tommy Griffin disappeared.

Through discovery of all of the foregoing records, Petitioner hopes to develop facts establishing a connection between the killings of Branam and Tommy Griffin and the investigation and prosecution of Lester Johnson. However, Petitioner has not advanced any specific allegations giving any reason to believe that the requested discovery may lead to relevant evidence that may entitle him to relief. Rule 6 does not "sanction fishing expeditions based on a petitioner's conclusory allegations." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004).

What Petitioner is seeking with this request is information which he speculates may lead to relevant evidence that Lester Johnson, or someone else, may have had a motive to kill Branam, which may entitle him to relief on his claims that the state concealed this exculpatory information and that counsel was ineffective for failing to investigate it. However, Petitioner merely speculates that these records might contain information which may lead to evidence indicating that someone else may have had a motive to kill Branam. What he has not done is set forth any specific allegations suggesting that his requested discovery may lead to any *evidence*, direct or circumstantial, which may show that someone else killed Branam, even if someone else had a "motive" to do so. The State presented abundant circumstantial evidence that Petitioner killed Branam, even accepting

11

Petitioner's allegations as to the lack of proof of motive. But the lack of proof of motive does not provide the necessary good cause to warrant discovery. Nor is the fact that there may have been other potential suspects, even those with motives, a reason by which the Court can find good cause to warrant discovery.

What Petitioner is seeking from this discovery request is a wholesale combing of law enforcement records to see if there might be any potentially exculpatory evidence in any of those files. This textbook example of a fishing expedition will not be abided. *See Stanford*, 266 F.3d at 460. Accordingly, this discovery request will be **DENIED**.

### 2. Records Relating to Branam's Cooperation with Law Enforcement

Petitioner also seeks discovery of all records, reports, or memorandum by the Sevier County Sheriff's Department, the Blount County Sheriff's Department, the 4th Judicial District Drug Task Force, the 5th Judicial District Drug Task Force, or the TBI that Branam provided information to law enforcement or otherwise cooperated with law enforcement in an attempt to aid in the apprehension of people involved in drug related activities. The only supporting allegation for this request is Sevier County Sheriff's Deputies' notes of interviews with witnesses which reveal that Branam was "known to have set up Jack Sutton (and perhaps others) on drug charges" [Doc. 113-14].

Once again, Petitioner is seeking to rummage through law enforcement files in an attempt to find information which may suggest that someone else may have had a motive to kill Branam. Again, however, there is no specific factual allegation justifying this request. Petitioner has not alleged that anyone previously had exhibited violence toward

Branam or threatened her, nor has Petitioner directed the Court's attention to anything from which it can infer that Branam may have been murdered by someone involved in drug related activity. He has not demonstrated that discovery of these records would contain any information that may entitle him to relief. Petitioner's request for these records is merely another fishing expedition masquerading as discovery. *Stanford*, 266 F.3d at 460. Accordingly, because Petitioner has failed to show good cause, this discovery request will be **DENIED**.

### C. Deposition of Billy Griffin

Plaintiff's final discovery request is that the Court grant him leave to serve a subpoena under Federal Rule of Civil Procedure 45 commanding the attendance at a deposition of Billy Griffin, the brother of Branam and Tommy Griffin [Doc. 113 p. 9]. Plaintiff contends that Griffin may be able to provide testimony regarding the disappearance of Tommy Griffin and the possible involvement of Billy Cogdill in Tommy Griffin's murder.

In support of this request, Petitioner avers that the proof presented at trial showed that, prior to the discovery of Branam's body, Cogdill made statements to Joyce Tipton and others that Branam would be found burned in a car. Accordingly, the state provided as *Brady* material a redacted note [Doc. 113-15] indicating that Cogdill had been present at Tommy Griffin's trailer and fought with him the night of his disappearance. Plaintiff further avers that when defense counsel sought additional information as to the source of the redacted annotation [Doc. 113-16], the Office of the District Attorney General provided

"misinformation" as to the source of the information about Cogdill, and that it actually came from Billy Griffin. Accordingly, Petitioner seeks to depose Billy Griffin about the events that transpired between Tommy Griffin and Cogdill on the night that Tommy Griffin disappeared.

Petitioner again has failed to set forth specific allegations providing any reason to believe that Billy Griffin has any information that may entitle Petitioner to relief. Instead, he can only speculate that Griffin has any additional information beyond what defense counsel learned prior to trial, *i.e.*, that Cogdill went to Tommy Griffin's trailer and fought with him the night of Tommy Griffin's disappearance. Captain Larry McMahan testified at the Blount County trial that Cogdill was investigated as a potential suspect. *State v. Dellinger*, No. E1997-00196-CCA-R3-DD, 2001 WL 220186, at * 8–9 (Tenn. Crim. App. March 7, 2001). Billy Griffin was interviewed by Deputy Arthur Harmon in 1992 and the unredacted notes of that interview do not contain any other potentially exculpatory information other than the information turned over to defense counsel prior to trial [Doc. 113-17], and thus do not provide a specific factual basis by which the Court could infer that Billy Griffin has any other information about the night in question and the altercation between Tommy Griffin and Cogdill that may entitle Petitioner to relief.

Because Petitioner has failed to state specific, non-conclusory allegations which would create any reason to believe that through deposing Billy Griffin he may be able to develop sufficient evidence to entitle him to relief, this discovery request will be **DENIED**.

14

## IV. CONCLUSION

Accordingly, upon due consideration of Petitioner's motion for discovery and accompanying exhibits, the Court concludes that Petitioner has failed to show good cause for the requested discovery in this case. Accordingly, for the reasons set forth herein, Petitioner's motion for discovery [Doc. 113] is **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE