UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | | |
|---|---|---|---|
| JAMES DELLINGER, | ) | | |
| | ) | | |
| Petitioner, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:09-CV-104-TAV-DCP |
| | ) | | DEATH PENALTY |
| TONY MAYS, | ) | | |
| | ) | | |
| Respondent. | ) | | |
| | ) | | |
| JAMES DELLINGER, | ) | | |
| | ) | | |
| Petitioner, | ) | No.: | 3:09-CV-404-TAV-DCP |
| | ) | | |
| v. | ) | | |
| | ) | | |
| TONY MAYS, | ) | | |
| | ) | | |
| Respondent. | ) | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Petitioner's Unopposed Motion to Stay and Abey All Federal Habeas Proceedings [Case No.: 3:09-CV-104, Doc. 233; Case No.: 3:09-CV-404, Doc. 199]. Petitioner seeks a stay of his capital and non-capital habeas corpus proceedings pending exhaustion of his intellectual-disability claim under *Atkins v. Virginia*, 536 U.S. 304 (2002).[1] According to Petitioner, he has a state-court remedy to exhaust his *Atkins* claim under Tennessee's newly amended statute, Tennessee Code

---

[1] In *Atkins*, 536 U.S. at 307, 321, the United States Supreme Court held that the execution of a "mentally retarded offender" is cruel and unusual punishment, in violation of the Eighth Amendment of the United States Constitution.

Annotated § 39-13-203 (2021).  Petitioner states that Respondent is not opposed to his motion, and Respondent, indeed, has not filed opposition [Case No.: 3:09-CV-104, Doc. 233 at 1–2; Case No.: 3:09-CV-404, Doc. 199 at 1–2].  For the reasons discussed herein, Petitioner's motion is **GRANTED in part** and **DENIED in part**.

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.      Trials and Post-Conviction Proceedings

In 1992, a grand jury indicted Petitioner, along with his nephew Gary Wayne Sutton, for the first-degree murders of Connie Branam and Tommy Griffin, in violation of Tennessee Code Annotated § 39-13-202(a)(1) [Case No.: 3:09-CV-104, Doc. 205-1 at 16–19; Case No.: 3:09-CV-404, Doc. 149-1 at 4–11].  Petitioner and Mr. Sutton stood trial first for Ms. Branam's murder in 1993 in the Criminal Court for Sevier County.  A jury convicted them of first-degree murder, and the Criminal Court for Sevier County sentenced Petitioner and Mr. Sutton to life in prison [Case No.: 3:09-CV-404, Doc. 149-4 at 95; Doc. 149-26 at 81:3–7].

Shortly after their convictions for Ms. Branam's murder, the State notified Petitioner and Mr. Sutton that it would seek the death penalty for Mr. Griffin's murder [*See* Case No: 3:09-CV-104, Doc. 63-58 at 2].[2]  During his pretrial proceedings, Petitioner asserted that he is mentally retarded and therefore statutorily ineligible for the death penalty under Tennessee law [*See* Doc. 205-5 at 49 (providing notice of Petitioner's affirmative

---

[2]  Petitioner's and Mr. Sutton's prior convictions for Ms. Branam's murder served as an aggravating factor for the State seeking the death penalty [*See* Case No.: 3:09-CV-104, Doc. 63-58 at 2].

2

defenses)].[3]  He notified the Circuit Court for Blount County that he sought to present evidence showing that he is mentally retarded under Tennessee Code Annotated § 39-13-203(a) [Case No.: 3:09-CV-104, Doc. 205-2 at 10 (citing Tenn. Code Ann. § 39-13-203)].[4]  At the time, "[m]ental retardation" meant that (1) an individual had significantly subaverage general intellectual functioning as evidenced by a functional intelligence quotient of seventy or below, (2) an individual had deficits in adaptive behavior, and (3) the "mental retardation had to have manifested during the developmental period, or by eighteen (18) years of age."  Tenn. Code Ann. § 39-13-203(a)(1)–(3) (1991); *see State v. Dellinger*, 79 S.W.3d 458, 506 n.7 (Tenn. 2002) (citing *id*. § 39-13-203(a)(b)).

In support of his mental-retardation defense, Petitioner filed a pretrial motion for "additional psychological evaluations" [Case No.: 3:09-CV-104, Doc. 205-2 at 4–5]. Petitioner, specifically, requested that the Circuit Court for Blount County permit an evaluation of him in an intoxicated state [*Id*. ¶ 5].  According to Petitioner, this type of evaluation would be necessary to properly assess his intelligence quotient level at the time of Mr. Griffin's death [*Id*.].

---

[3]  The Court refers to Petitioner's mental-retardation and intellectual-disability claim interchangeably in this memorandum to reflect the change in terminology under Tennessee law. At the time of Petitioner's trials, the term mental retardation, rather than intellectual disability, was defined under Tennessee Code Annotated § 39-13-203(a).  In 2010, the Tennessee General Assembly amended the term "mental retardation" with "intellectual disability."  *Keen v. State*, 398 S.W.3d 594, 623 n.6 (Tenn. 2012).

[4]  Although the execution of mentally-retarded defendants was not constitutionally prohibited at the time of Petitioner's capital trial, it was prohibited under Tennessee Code Annotated § 39-13-203.  *Id*. § 39-13-203(b) (1991) ("[N]o defendant with mental retardation at the time of committing murder shall be sentenced to death.").

3

The Circuit Court for Blount County held a hearing on Petitioner's pretrial motion. Petitioner presented testimony from clinical psychologist Peter B. Young, Ph.D. [Doc. 205-13 at 16–64]. According to Dr. Young, Petitioner had an intelligence quotient level of "somewhere between 72 . . . and 83" [Doc. 205-2 at 12]. But he also opined that Petitioner's use of alcohol could have reduced his intelligence quotient level to below seventy at the time that Mr. Griffin was killed, thereby making Petitioner statutorily ineligible for the death penalty under Tennessee law [Doc. 205-13 at 21:19–24; 24:16–24]. On cross-examination, Dr. Young acknowledged, though, that there was no recognized statistical data that could be used to adjust Petitioner's intelligence quotient level while he was in an intoxicated state [*Id*. at 39:16–17]. After the motion hearing, the Circuit Court for Blount County overruled Petitioner's request for additional testing [*Id*. at 126–30]. It also determined that Petitioner failed to satisfy the three-prong definition of mental retardation under Tennessee Code Annotated § 39-13-203(a) [*Id*.].

In 1996, the jury found Petitioner and Mr. Sutton guilty of Mr. Griffin's murder. The jury recommended the death sentence [*See* Doc. 205-3 at 8]. Based on the jury's recommendation, the Circuit Court for Blount County sentenced Petitioner and Mr. Sutton to death [*Id*.]. The Tennessee Court of Criminal Appeals and Tennessee Supreme Court affirmed Petitioner's conviction and sentence. *Dellinger*, 79 S.W.3d at 477–78. Petitioner did not raise his mental-retardation claim on direct appeal; he only argued that his intelligence quotient level while intoxicated was relevant to the issues of premeditation and intent. *Id*. at 482; *see Dellinger v. State*, No. E2013-02094-CCA-R3-ECN, 2015 WL

4

4931576, at *9 (Tenn. Crim. App. Aug. 18, 2015) ("On appeal, the Petitioner and his codefendant abandoned their intellectual disability claim but maintained that their IQ levels while intoxicated were relevant to the issues of intent and premeditation." (citation omitted)).

In 2003, Petitioner filed a *pro se* petition for post-conviction relief under the Tennessee Post-Conviction Procedure Act [Case No.: 3:09-CV-104, Doc. 206-20 at 6–16]. *See* Tenn. Code. Ann. §§ 40-30-101–40-30-122. Through counsel, he raised a "*Van Tran-Atkins*"[5] claim in his first amended petition [Doc. 206-20 at 83–85]. During the evidentiary hearing on his petition for post-conviction relief, Petitioner presented testimony from clinical psychologist Peggy Joyce Cantrell [*See* Doc. 206-26 at 108]. Although Dr. Cantrell acknowledged that Petitioner has "cognitive limitations," she did not conclude that Petitioner is intellectually disabled. *Dellinger*, 2015 WL 4931576 at *2. In 2005, the Circuit Court for Blount County denied Petitioner's petition for post-conviction relief [Doc. 206-21 at 89–97]. Petitioner did not raise his *Atkins*-related or an intellectual-disability claim on appeal. *See Dellinger*, 2015 WL 4931576 at *2 ("On appeal, the Petitioner did not pursue any claims of intellectual disability.").

---

[5] The Tennessee Supreme Court in *Van Tran v. State*, 66 S.W.3d 790, 794 (Tenn. 2001), held, as a matter of first impression, that "the execution of a mentally retarded individual violates the Eighth Amendment to the United States Constitution and article I, § 16 of the Tennessee Constitution." *Id*. at 812. The Tennessee Supreme Court decided *Van Tran* just before the United States Supreme Court decided *Atkins* in 2002. *See id*. at 800 (noting that the United States Supreme Court "very recently granted certiorari" (citing *Atkins v. Virginia*, 533 U.S. 976, 122 S. Ct. 24 (2001))).

5

## B.    Federal Habeas Corpus Proceedings

In 2009, Petitioner initiated separate habeas corpus proceedings in this Court pursuant to 28 U.S.C. § 2254. In his capital habeas corpus proceeding, Petitioner asserts in his amended petition that he "suffers from cognitive impairments which render him mentally retarded" pursuant to *Atkins* and under Tennessee law [Case No.: 3:09-CV-104, Doc. 95 at 4, 11, 41–42]. He also indicates that his *Atkins* claim is "not fully exhausted" [*Id*. at 5].[6]

Petitioner initially moved the Court to stay his capital habeas corpus proceeding on December 21, 2011 [Case No.: 3:09-CV-104, Doc. 56. Petitioner informed the Court that he intended to return to state court— the Circuit Court for Blount County—to exhaust his *Atkins* claim under Tennessee Code Annotated § 40-30-117(a) [*see id*. at 1]. Tennessee Code Annotated § 40-30-117(a), in relevant part, allows a petitioner to move the trial court to reopen "the first post-conviction petition" if (1) the claim "is based upon a final rule of an appellate court establishing a constitutional right that was not recognized . . . at the time of trial" or (2) the claim is based upon "new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted." *Id*. § 40-30-117(a)(1)–(2).

---

[6] Petitioner does not raise an *Atkins*-related intellectually-disability claim in his non-capital habeas corpus petition. He only asserts that he is intellectually disabled in the context of asserting other claims, *i.e.*, his competency to stand trial and ineffective assistance of counsel [Case No.: 3:09-CV-404, Doc. 104 ¶¶ 3.2.8., 3.2.9.2, 3.4.2.3.].

6

Petitioner believed at the time that Tennessee Code Annotated § 40-30-117(a) was an appropriate procedural vehicle for adjudicating his *Atkins* claim, for two reasons. First, Petitioner argued *Keen*, 398 S.W.3d at 594–623, which was pending before the Tennessee Supreme Court at the time, would squarely answer whether there was a new rule of constitutional law that would allow him to reopen his post-convicting proceedings under Tennessee Code Annotated § 40-30-117(a)(1) [Case No.: 3:09-CV-104, Doc. 56 at 2]. Second, he claimed that he had "compelling new evidence," pursuant to Tennessee Code Annotated § 40-30-117(a)(2), in support of his *Atkins* claim [*Id*. at 3]. This "compelling evidence" consisted of the report of Clinical and Forensic Neuropsychologist Dale G. Watson, Ph.D., the declaration of Psychological Consultant Stephen Greenspan, Ph.D., and the report of Clinical and Forensic Psychologist James F. Murray, Ph.D. [*Id*. at , 8; *see* Doc. 63-4 at 2–21; *see also* Doc. 63-5 at 2–12]. At that time, Respondent disputed whether Petitioner had a state-court remedy to exhaust his *Atkins* claim, [Doc. 57 at 1], and indicated that "there's a pretty good argument . . . for procedural default," [Doc. 67 at 45:13–15].

After a hearing, the Honorable C. Clifford Shirley, Jr., United States Magistrate Judge, denied Petitioner's motion to stay [Doc. 70]. He recognized, however, that *Keen* "might require it to reconsider its decision" [*Id*. at 1]. He ordered Petitioner to file status reports of his state-court proceedings and a status report on the *Keen* case at least every sixty days [*Id*. at 2].

While Petitioner's motion to reopen was pending in the Circuit Court for Blount County, the Tennessee Supreme Court decided *Keen*. By status report dated July 2, 2013,

Petitioner informed the Court that *Keen* was not helpful to him in adjudicating his *Atkins* claim under Tennessee Code Annotated § 40-13-117 [Doc. 106 at 2]. Although the *Keen* court recognized that "Tennessee has no business executing persons who are intellectually disabled," it also held that Tennessee Code Annotated § 40-30-117(a) is not a proper "vehicle to assert" an intellectual-disability claim. *Keen*, 398 S.W.3d at 613.

In light of *Keen*, Petitioner sought other state-court remedies to adjudicate his *Atkins* claim. In February of 2013, he amended his motion to reopen to include the following "Additional Claims for Relief": a writ of error *coram nobis*, a common law writ of *audita querela*, a declaratory judgment pursuant to Tennessee Code Annotated § 29-14-102, and relief under the Tennessee Constitution and the Eighth and Fourteenth Amendments to the United States Constitution [Case No.: 3:09-CV-104, Doc. 114-2 at 32–33; *see* Doc. 106 at 2]. Petitioner, however, was unsuccessful. On August 14, 2013, after hearing legal argument on the State's motion for summary dismissal, the Circuit Court for Blount County denied Petitioner relief [Doc. 111-1]. The Tennessee Court of Criminal Appeals affirmed the trial court's decision, and in 2016, the Tennessee Supreme Court denied him permission to appeal. *Dellinger*, 2015 WL 4931576 at *1, *perm. app. denied* (Tenn. May 6, 2016).

Petitioner's attempts to adjudicate his *Atkins* claim in state court, however, did not cease. By status report dated July 8, 2016, Petitioner informed the Court that, on June 23, 2016, he filed another petition for a writ of *error coram nobis* "and other Relief" in the Circuit Court for Blount County [Case No.: 3:09-CV-104, Doc. 146]. The Circuit Court for Blount County dismissed Petitioner's petition without a hearing, and in 2019, the

8

Tennessee Court of Criminal Appeals affirmed the trial court's decision. *Dellinger v. State*, No. E2018-00135-CCA-R3-ECN, 2019 WL 1754701, at *1 (Tenn. Crim. App. Apr. 17, 2019). On May 18, 2020, the United States Supreme Court denied Petitioner's petition for writ of *certiorari*. *Dellinger v. State*, 140 S. Ct. 2780 (2020). Petitioner notified this Court that his *Atkins* claim was "final" [Case No.: 3:09-CV-104, Doc. 230].

Petitioner now asserts that a new amendment to Tennessee Code Annotated § 39-13-203 will entitle him to a hearing and potential remedy on his *Atkins* claim [Case No.: 3:09-CV-404, Doc. 193 at 2]. On October 27, 2021, he notified the Court that his attorneys intended to file a petition under Tennessee Code Annotated § 39-13-203 in the Circuit Court for Blount County [*Id.*]. According to Petitioner, "[t]he ensuing litigation is expected to result in a state court hearing, involving multiple expert witnesses, sometime in 2022" [*Id.*].

In light of Petitioner's notice, the Court ordered him to file status reports of his state proceedings every ninety days [Case No.: 3:09-CV-104, Doc. 230]. By status report dated February 3, 2022, Petitioner informed the Court that his attorneys filed a Petition to Determine Ineligibility to be Executed in the Circuit Court for Blount County under Tennessee Code Annotated § 39-13-203 [Doc. 231]. By status report dated May 4, 2022, Petitioner notified the Court that the State moved to dismiss the petition on procedural grounds [Doc. 232]. As of August 2, 2022, the Circuit Court for Blount County still has not ruled on the State's motion [*See* Doc. 235].

9

On May 31, 2022, Petitioner filed the instant motion to stay and abey all federal habeas corpus proceedings [Case No.: 3:09-CV-104, Doc. 233; Case No.: 3:09-CV-404, Doc. 199]. He requests, specifically, that the Court enter an order "staying and holding in abeyance both these actions, and all pending deadlines, until further notice and upon a resolution of his state court proceedings" [Case No.: 3:09-CV-104, *id*. at 2; Case No.: 3:09-CV-404, *id.* at 2]. In support of his motion, he attaches a Neurocognitive Evaluation from Dr. Watson, dated December 21, 2021 [Case No.: 3:09-CV-104, Doc. 233-1; Case No.: 3:09-CV-404, Doc. 199-1].

## II. DISCUSSION

Petitioner argues that the recent amendment to Tennessee Code Annotated § 39-13-203 renders his *Atkins* claim unexhausted [Case No.: 3:09-CV-104, *id*. at 4; Case No.: 3:09-CV-404, *id*. at 4]. According to Petitioner, the Court, consequently, should exercise its discretion in staying and holding in abeyance his "newly 'mixed' habeas petition" under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and pursuant to *Rhines v. Weber*, 544 U.S. 269, 276 (2005) [Case No.: 3:09-CV-104, *id*. at 5; Case No.: 3:09-CV-404, *id*. at 5].

A state prisoner must exhaust his or her remedies available in state court before a federal court can grant a writ of habeas corpus under 28 U.S.C. § 2254. *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) ("A federal court may not grant a writ of habeas corpus unless the applicant has exhausted all available remedies in state court." (citing § 2254(b)(1)(A))). To satisfy the exhaustion requirement, a habeas petitioner must "fairly

10

present" to the state court "both a factual and legal basis for" his or her constitutional claim. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) (internal quotation marks and citation omitted). In addition, a prisoner must give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see Clinkscale v. Carter*, 375 F.3d 430, 436–440 (6th Cir. 2004) (explaining the exhaustion doctrine).

The Supreme Court has explained that the question under the exhaustion doctrine is "not only whether a prisoner has exhausted his state remedies, but also whether he has *properly*" done so. *O'Sullivan*, 526 U.S. at 848 (emphasis in original). If "state-court remedies are no longer available because the prisoner failed to comply with the deadline for seeking state-court review or for taking an appeal, those remedies are technically exhausted." *Woodford v. Ngo*, 548 U.S 81, 92–93 (2006) (citing *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). In this instance, exhaustion does not automatically entitle the habeas petitioner to litigate his or her claim in federal court. *Id.* at 93. "Instead, if the petitioner procedurally defaulted those claims, the prisoner is generally barred from asserting those claims in a federal habeas proceeding." *Id.* (citations omitted).

The Supreme Court in *Rose v. Lundy*, 455 U.S. 509, 510 (1982), interpreted the exhaustion requirement under 28 U.S.C. §§ 2254(b), (c), as one of total exhaustion. *Lundy*, 455 U.S. at 518, 520, 522. The *Lundy* Court explained that pursuant to the total-exhaustion rule, a district court must dismiss a "mixed petition," meaning it is a petition that contains

11

exhausted and unexhausted claims. *Id.* at 509–10. Dismissing a mixed petition would leave "the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.* at 510.

The *Lundy* decision, however, predated the AEDPA, which imposes a one-year statute of limitations for seeking federal habeas review. 28 U.S.C. § 2244(d)(1). The statute of limitations under the AEDPA greatly changed the practical impact of *Lundy*'s total-exhaustion rule. *See Rhines*, 544 U.S. at 274 (noting that, at the time of *Lundy*, "there was no statute of limitations on federal habeas petitions"); *see also Banks v. Jackson*, 149 F. App'x 414, 421 (6th Cir. 2005) ("[T]he statute-of-limitations concerns resulting from the enactment of AEDPA required a modification of *Lundy*'s rule[.]"). If a district court, for instance, dismissed a mixed petition under *Lundy*'s total-exhaustion rule, a petitioner risked being time-barred from bringing his or her claims again, once exhausted, in federal court. *Rhines*, 544 U.S. at 275.

The *Rhines* Court adopted a stay-and-abeyance procedure to alleviate this problem. *Id.* The *Rhines* Court explained that a district court has the power to stay a habeas corpus petition and hold it in abeyance while the petitioner returns to state court to exhaust previously unexhausted claims. *Id.* at 276. When the petitioner exhausts his or her state-court remedies, a district court "will lift the stay and allow the petitioner to proceed in federal court." *Id.* at 275–76.

A district court's authority to issue a stay and hold a mixed habeas petition in abeyance, however, is not unbridled. In structuring a stay, it must be mindful that "[s]taying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Id*. at 277. On the other hand, "it likely would be an abuse of discretion for a district court to deny a stay" when (1) the petitioner has good cause for failing to exhaust a claim, (2) an unexhausted claim is "potentially meritorious" or is not "plainly meritless," *and* (3) there is no indication that the petitioner has "engaged in intentionally dilatory litigation tactics." *Id*. at 270, 278. According to Petitioner, he satisfies all three factors.

## A. Good Cause for Failure to Exhaust

The Court will first consider whether Petitioner has shown "good cause" for failing to exhaust his *Atkins* claim. *Id*. at 270. The *Rhines* Court did not define good cause, but the Supreme Court in *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005), in dicta, discussed the *Rhines* Court's good-cause requirement. In *Pace*, the Court recognized that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause'" for failure to exhaust under *Rhines*. *Id*. (citing *Rhines*, 544 U.S. at 278).

Still, due to the lack of guidance from the Supreme Court, lower federal courts have crafted their own definition of the *Rhines* good-cause requirement. *See Woodson v. Smith*, No. 5:08CV2779, 2010 WL 3781579, at *2–*3 (E.D. Ohio Sept. 23, 2010) (stating that "[n]either the Supreme Court [n]or the Sixth Circuit Court of Appeals has provided much

13

guidance"); *see also Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014) (recognizing that "[t]here is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust"). Some federal courts, for instance, have adopted a more expansive definition of the *Rhines* good-cause requirement—one that is less stringent than the for-cause showing to excuse a procedural default. *See, e.g.*, *Riner v. Crawford*, 415 F. Supp. 2d 1207, 1210 (D. Nev. 2006) (recognizing that the *Rhines* good-cause requirement "should not be so strict a standard"); *Rhines v. Weber*, 408 F. Supp. 2d 844, 848 (D. S.D. 2005) ("Reasonable confusion on the part of a petitioner is less stringent than acts that have been found sufficient to establish cause for procedural default." (citation omitted)). Other federal courts, however, have rejected the more expansive interpretation of *Rhines*. They have, instead, followed "the cases which analogize the *Rhines* good cause standard for the failure to exhaust to the federal habeas cause standard required to overcome a procedural bar." *Carter v. Friel*, 415 F. Supp. 2d 1314, 1319 (D. Utah 2006); *see Hernandez v. Sullivan*, 397 F. Supp. 2d 1205, 1207 (C.D. Cal. 2005) (deeming "it appropriate to look to procedural default case law" when considering whether the petitioner satisfied the good-cause requirement under *Rhines*).

Caselaw from this circuit also shows that there is a lack of uniformity in defining good cause for failure to exhaust under *Rhines*. *Wright v. Trombley*, No. 07-CV-10965, 2007 WL 4181316, at *2 (E.D. Mich. Nov. 27, 2007) (noting "a split of authority"). Some district courts have held that appellate counsel's failure to raise a claim on "appeal of right" is good cause for a petitioner's failure to exhaust a claim. *Boyd v. Jones*,

No. 05-73792-DT, 2005 WL 2656639, at *2 (E.D. Mich. Oct. 14, 2005); *Martin v. Warren*, No. 05-71849, 2005 WL 2173365, at *1–*2 (E.D. Mich. Sept. 2, 2005); *see Lanton v. Lafler*, No. 2:06-CV-11103-DT, 2007 WL 2780552, at *2 (E.D. Mich. Sept. 24, 2007) (holding that ineffective assistance of appellate counsel, coupled with the petitioner's "reasonable confusion" over whether the claims were properly exhausted, is good cause for failure to exhaust) (citing *Pace*, 544 U.S. at 416)). One district court, however, was less forgiving of a petitioner when he claimed ineffective assistance of appellate counsel on direct appeal. *Hubbert v. Renico*, No. 04-CV-71018-DT, 2005 WL 2173612, at *1–*2, *4 (E.D. Mich. Sept. 7, 2005). The district court held that "[e]ven if appellate counsel was ineffective for failing to raise" certain claims on direct appeal, this did not excuse the petitioner's failure to raise these claims in a *pro se* post-conviction motion. *Id.* at *4.

Other district courts in this circuit have also considered whether the petitioner's return to state court would be futile when considering whether there is "good cause" to grant a *Rhines* stay. *See, e.g.*, *Battiste v. Miller*, No. 1:17-cv-00128, 2017 WL 1907262, at *1–*2, *5 (N.D. Ohio Apr. 18, 2017) (holding that the petitioner "failed to show good cause" and a "stay would be futile" when his claim was "likely procedurally defaulted"); *Spivey v. Jenkins*, No. 4:16CV0384, 2017 WL 1113339, at *6 (N.D. Ohio Mar. 24, 2017). One district court, for instance, denied the petitioner's motion to hold his petition in abeyance because it determined that his claims would be barred under Ohio's *res-judicata* doctrine. *Spivey*, 2017 WL 1113339, at *6. For this reason, the district court determined that the petitioner's return to state court "would be futile." *Id.* A petitioner's return to state

15

court, on the other hand, may not be futile when it is "her first opportunity to raise" a particular claim. *Titlow v. Burt*, No. 2:07-13614, 2007 WL 2584762, at *3 (E.D. Mich. Sept. 7, 2007); *see Horton v. Skipper*, No. 2:22-CV-10142-TGB, 2022 WL 1194063, at *3 (E.D. Mich. Apr. 21, 2022) (holding that there was good cause for the petitioner's failure to exhaust his claim "because state post-conviction review would be the first opportunity that he had to raise this claim in the Michigan Courts" (citing *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010))).

Petitioner appears to rest primarily on *Horton* in arguing that there is good cause for failure to exhaust under *Rhines* [Case No.: 3:09-CV-104, Doc. 233 at 7 (citing *Horton*, 2022 WL 1194063 at *2); Case No.: 3:09-CV-404, Doc. 199 at 7 (citing *id.*)].[7]  According to him, good cause exists for failing to exhaust his *Atkins* claim because it was not until 2021 that he had "a procedural avenue and remedy" under Tennessee law to do so [*Id.*]. He claims that he now has "an opportunity to have his *Atkins* claim reviewed in state court for the first time" [Case No.: 3:09-CV-104, *id.* at 2; Case No.: 3:09-CV-404, *id.* at 2].

Petitioner, however, oversimplifies the complex and lengthy record of his state-court proceedings.  This is not his first opportunity to raise his claim in state court, as it was for the petitioner in *Horton*.  *See Horton*, 2022 WL 1194063 at *3 ("[P]ost-conviction review would be the first opportunity that he [the petitioner] had to raise []his claim in

---

[7]  Petitioner also makes an "alternative" argument in a footnote [Case No.: 3:09-CV-104, Doc. 233 at 6–7 n.3; Case No.: 3:09-CV-404, Doc. 199 at 6–7 n.3].  He states that he has pled ineffective assistance of post-conviction counsel as a basis for excusing procedural default [*Id.*]. He asserts the same grounds, "ineffective assistance of postconviction counsel," as "additional or alternative 'good cause' justifying a *Rhines* stay" [*Id.*].

16

[state court].").  Petitioner's first opportunity to raise his *Atkins* claim was during his post-conviction proceedings.  Although he did plead a "*VanTran-Atkins*" claim in his amended petition for post-conviction relief, he "did not pursue any claims of intellectual disability" on appeal [Case No.: 3:09-CV-104, Doc. 206-20 at 83–85].  *Dellinger*, 2015 WL 4931576 at *2; *see Wallace v. Sexton*, 570 F. App'x 442, 444 (6th Cir. 2014) (holding that the appellant procedurally defaulted claims when he failed to properly raise them before the Tennessee Court of Criminal Appeals during his post-conviction proceedings).  *But see Rhines*, 408 F. Supp. 2d at 848–49 (holding that ineffective assistance of post-conviction counsel, combined with the petitioner's "reasonable confusion," satisfies *Rhines*' good-case requirement).

Still, the circumstances fall within "the realm of good cause under *Rhines*" because Petitioner's return to state court to exhaust his *Atkins* claim may not be futile under Tennessee's newly amended statute, for two reasons.  *Trombley*, 2007 WL 4181316 at *3.  First, the trial court may adjudicate Petitioner's *Atkins* claim under Tennessee's newly amended statute, particularly under subsection (g) of Tennessee Code Annotated § 39-13-203.  *Cf. Cunningham v. Kelly*, 423 F. Supp. 3d 1034, 1039 (D. Or. 2019) (granting a *Rhines* stay when there was a "reasonable likelihood the Oregon courts" would "examine Petitioner's claim on the merits" under Oregon's new law).  Before the Tennessee General Assembly's recent amendment to Tennessee Code Annotated § 39-13-203, the Tennessee Supreme Court recognized that a procedural vehicle for a capital inmate to pursue an intellectual-disability claim did not exist.  *Keen*, 398 S.W. 3d at 613.  However, the

17

*Keen* court was clear that its decision did not foreclose the Tennessee General Assembly's ability to create a procedure that permits a capital inmate to pursue an intellectual-disability claim. *Id*.

According to Petitioner, the Tennessee General Assembly has finally "answered this call." [*See* Case No.: 3:09-CV-104, Doc. 233 at 3]. On May 11, 2021, subsection (g) of Tennessee Code Annotated § 39-13-203 went into effect. Subsection (g) provides the following:

> (1) A defendant who has been sentenced to the death penalty prior to the effective date of this act and whose conviction is final on direct review may petition the trial court for a determination of whether the defendant is intellectually disabled. The motion must set forth a colorable claim that the defendant is ineligible for the death penalty due to intellectual disability . . . .
>
> (2) A defendant shall not file a motion under subdivision (g)(1) if the issue of whether the defendant has an intellectual disability has been previously adjudicated on the merits.

*Id*. § 39-13-203 (g)(1), (2). The statute is silent as to whether Petitioner would have to overcome any procedural obstacles before the trial court considers the merits of his intellectual-disability claim under *Atkins*. In addition, Petitioner has not had his *Atkins* claim "previously adjudicated on the merits," and the state court, therefore, may be inclined to consider it. *Id*. § 39-13-203(g)(2).

Second, Petitioner states that "one individual sentenced to death prior to *Atkins* has received relief" under Tennessee's newly amended statute [Case No.: 3:09-CV-104, Doc. 233 at 3]. Like Petitioner, Pervis Payne, an inmate who was sentenced to death in

18

1988, filed a Petition to Determine Ineligibility to Be Executed Pursuant to Tennessee Code Annotated § 39-13-203(g) in state court [*Id.*]. Mr. Payne, also like Petitioner, was "never afforded an evidentiary hearing" in state court on his intellectual-disability claim. *Payne v. State*, 493 S.W.3d 478, 480 (Tenn. 2016). For these reasons, Petitioner's return to state court may not be futile, and he therefore satisfies the first factor under *Rhines*.

The Court, however, is unable to reach the same conclusion with respect to his non-capital habeas corpus proceeding. Although Petitioner has previously indicated that his two federal habeas proceedings are "inextricably interrelated," he does not explain the relevance of *Atkins* to his non-capital sentence [Case No.: 3:09-CV-404, Doc. 19 at 2]. The *Atkins* Court addressed the constitutionality of *capital* punishment to "mentally retarded offenders." 536 U.S. at 312. His return to state Court to exhaust his *Atkins* claim in his non-capital case, therefore, would likely be futile. *See United States v. Tucker*, 204 F. App'x 518, 521–22 (6th Cir. 2006) (rejecting the defendant-appellant's argument that *Atkins* applies to his non-capital sentence); *see also United States v. Laffoon*, 145 F. App'x 964, 965 (5th Cir. 2005) ("[Defendant]'s reliance on *Atkins* to extend its rationale to noncapital cases is unavailing.").[8] In addition, although Respondent has not filed opposition, a lack of opposition itself will not justify granting a stay when Petitioner has not shown good cause under *Rhines*. *See Battiste*, 2017 WL 1907262 at *2 ("Despite

---

[8] Petitioner also states in his motion that "this Court previously stayed this matter." [Case No.: 3:09-cv-404, Doc. 199 at 1; Case No: 3:09-cv-104, Doc. 233 at 1]. This Court did previously stay Petitioner's capital habeas corpus proceeding [*See* Case No.: 3:09-cv-104, Doc. 116]. However, it has never stayed his non-capital habeas corpus proceeding.

19

Respondent's lack of opposition, . . . [the petitioner]'s request should be denied because he has not shown good cause for his failure to exhaust and his appeal would be futile."); *see also Neuens v. City of Columbus*, 303 F.3d 667, 670 (6th Cir. 2002) ("Issues of law are the province of courts, not of parties to a lawsuit, individuals whose legal conclusions may be tainted by self-interest. Courts, accordingly, are not bound to accept as controlling, stipulations as to questions of law." (internal quotation marks and citations omitted)).

For these reasons, Petitioner's motion to stay his non-capital habeas corpus proceeding and to hold his non-capital habeas corpus petition in abeyance [Case No.: 3:09-CV-404, Doc. 199] is **DENIED**. Petitioner, however, satisfies the first factor under *Rhines* with respect to his capital habeas corpus proceeding for the reasons this Court already stated, and the Court will address the remaining factors under *Rhines*.

### B. Potentially Meritorious or Plainly Meritless

Next, the Court must consider whether Petitioner's *Atkins* claim is "potentially meritorious" or is not "plainly meritless." *Rhines*, 544 U.S. at 270, 277. Like the first factor of *Rhines*, the Supreme Court did not define the phrase "potentially meritorious" or "plainly meritless." *Id*. In this circuit, "apparent merit" of a petitioner's unexhausted claim, and "relatedly, whether th[e] Court would benefit from a state-court ruling," are "[c]hief . . . considerations" under *Rhines*' second factor. *Thomas v. Stoddard*, 89 F. Supp. 3d 937, 943 (E.D. Mich. 2015). In considering whether a claim is "plainly meritless," district courts in this circuit have refrained from weighing the evidence of a particular claim and instead, only conduct an "initial review" of a petitioner's claims. *Wengorovius v. Scutt*,

No. 09-CV-13228, 2009 WL 2849577, at *3 (E.D. Mich. Sept. 1, 2009); *see Strickland v. Berghuis*, No. 13-cv-10350, 2013 WL 2482895, at *2 (E.D. Mich. June 10, 2013) ("Most courts applying the standard do so in a conclusory fashion without weighing or even considering the evidence."). In addition, at least one district court has held that the petitioner's *Atkins* claim was not "facially meritless" for purposes of determining a *Rhines* stay when she provided "evidence of intellectual impairment" through expert declarations. *Brown v. Rogers*, No. 1:99cv549, 2017 WL 1134374, at *8 (S.D. Ohio Mar. 27, 2017).

Petitioner argues that the second factor under *Rhines* weighs in his favor [Case No.: 3:09-CV-104, Doc. 233 at 8]. He maintains that his *Atkins* claim is not plainly meritless because "[h]is filing in state court presents a colorable claim of intellectual disability" [*Id.*]. He also states that he supports his claim through expert reports "and other evidence," notably through Dr. Watson's report, Dr. Greenspan's report, and "a biopsychosocial evaluation" [*Id.* (citing "Attach. A," "D.E. 73-3," "D.E. 73-12")].

The Court's "initial review" of Petitioner's *Atkins* claim does not indicate that it is "plainly meritless." *Wengorovius*, 2009 WL 2849577 at * 3. His *Atkins* claim, rather, could be "potentially meritorious" because he provides "evidence of intellectual impairment" through the report of Forensic Neuropsychologist Dr. Watson. *Brown*, 2017 WL 1134374 at *4. Dr. Watson speaks to each of the three criteria necessary to prove intellectual disability under Tennessee Code Annotated § 39-13-203(a). To prove intellectual disability, an individual must: (1) have significantly subaverage general intellectual functioning, (2) have deficits in adaptive behavior, and (3) show that the

21

intellectual disability manifested during the developmental period, or by eighteen years of age. *Id*. § 39-13-203(a)(1)–(3).[9]  Tennessee's statutory definition of intellectual disability tracks the American Association on Intellectual and Developmental Disabilities'[10] clinical definition, which the Supreme Court endorsed in *Atkins*.  *Brown*, 2017 WL 1134374 at *4; *see Atkins*, 536 U.S. at 354 n.3.

As to the first criterion, Dr. Watson states that Petitioner's "Full Scale IQ score" is 69, "falling at the 2nd percentile" [Doc. 233-1 at 62].  As such, he describes Petitioner's general intellectual functioning as "significantly subaverage," consistent with Tennessee Code Annotated § 39-13-203(a) [*Id*.].  Dr. Watson opines that Petitioner satisfies the second criterion under § 39-13-203(a) because Petitioner has "significant limitations in intellectual functioning," based on Dr. Greenspan's evaluation of Petitioner, Independent Social Worker Jan Vogelsang's biopsychosocial evaluation of Petitioner, and his own neuropsychological evaluation, all of which Dr. Watson states "confirm deficits in functional academic skills and language-based communication" [*Id*. at 64].  Finally, Dr. Watson relies on the declarations of Petitioner's family members, a video-taped deposition of his former wife, who met him prior to him reaching eighteen years of age, and Petitioner's school records, in concluding that his intellectual disability "manifested

---

[9] In May of 2021, the Tennessee General Assembly, in addition to adding subsection (g), modified subsection (1) of Tennessee Code Annotated § 39-13-203(a) by removing the language that significantly subaverage intellectual functioning must be "evidenced by a functional intelligence quotient (I.Q.) of seventy (70) or below."  Tenn. Code Ann. § 39-13-203(a)(1) (2014).

[10] At the time of *Atkins*, the American Association on Intellectual and Developmental Disabilities was known as the American Association on Mental Retardation.  *Brown*, 2017 WL 1134374 at *4 (citing *Atkins*, 536 U.S. at 318).

22

during the developmental period," pursuant to the third criterion of Tennessee Code Annotated § 39-13-203(a) [*Id.* at 65].

In addition, the Court, "relatedly," may consider whether it "would benefit from a state-court ruling" on Petitioner's *Atkins* claim when considering the second factor under *Rhines*. *Stoddard*, 89 F. Supp. 3d at 943. The state courts' resolution of Petitioner's *Atkins* claim is indeed critical to resolving his capital habeas petition because, as Petitioner notes, a favorable decision in state court could moot "'many of his claims . . . , especially those challenging the legitimacy of his death sentence'" [Doc. 233 at 9–10 (quoting *Cade v. Lumpkin*, No. 3:17-cv-3396-G-BT, 2020 WL 6576179, at \*6 (N.D. Tex. July 2, 2020)]. *See Stoddard*, 89 F. Supp. 3d at 942 ("Considerations of judicial economy support the district court's decision to withhold decision on . . . claims that could have been mooted by the pending state proceedings." (internal quotation marks and citation omitted)). But even an unfavorable state-court decision could benefit the Court when, as here, the Supreme Court has tasked the states with developing their own measures for adjudicating an *Atkins* claim. *See Atkins*, 536 U.S. at 317 ("'[W]e leave to the State[s] the task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences" (quoting *Ford v. Wainright*, 477 U.S. 399, 405, 416–17 (1986))); *see also Brown*, 2017 WL 1134374 at \*4 (noting that state courts are tasked with "fashioning procedures for pursuing an '*Atkins*' claim" (citing *Atkins*, 536 U.S. at 317)).

To conclude, Petitioner's *Atkins* claim is "potentially meritorious" and is not "plainly meritless" for the reasons this Court already stated. *Rhines*, 544 U.S.

23

at 270, 277. In addition, the Court "would benefit from a state-court ruling" on Petitioner's *Atkins* claim. *Stoddard*, 89 F. Supp. 3d at 943. For these reasons, Petitioner satisfies the second factor under *Rhines*.

### C. Intentionally Dilatory Litigation Tactics

Under the final factor of *Rhines*, the Court must consider whether Petitioner's use of a stay is based on "dilatory tactics." *Rhines*, 544 U.S. at 277–78. "[I]f a petitioner engages in abusive litigation tactics or intentional delay, the district court should not grant him a stay." *Id*. at 278. When considering this factor, courts must be mindful that "capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death." *Id.* According to Petitioner, his request for a stay "is not a delay tactic or an effort to forum shop" [Doc. 233 at 8]. He maintains that he only "seeks to comply precisely with the terms of the AEDPA and the Supreme Court's numerous directives regarding exhaustion" by pursuing an available state-court remedy that was not previously available to him [*Id*. at 8–9].

The Court would be remiss if it did not acknowledge that Petitioner's capital habeas corpus proceeding has been lengthy. In a similar vein, it is unclear why Petitioner did not move for a stay of this proceeding sooner when Tennessee's amended statute went into effect over a year ago, in May 2021. *Cf. Hubbard v. Bell*, No. 07-CV-15392, 2009 WL 2447415, at *2 (E.D. Mich. Aug. 6, 2009) (recognizing that petitioner failed to explain his eleven-month delay in filing his motion to stay). The Court, however, cannot say definitively that Petitioner, in requesting a stay of his capital habeas corpus proceeding, is

24

engaging "in intentionally dilatory litigation tactics." *Rhines*, 544 U.S. at 278. And absent opposition, the Court does not anticipate prejudice to Respondent in staying his capital habeas corpus proceeding. *See Stoddard*, 89 F. Supp. 3d at 943 (considering prejudice to the respondent). For these reasons, Petitioner satisfies the third factor under *Rhines*.

## III.  CONCLUSION

For the foregoing reasons, Petitioner's Unopposed Motion to Stay and Abey All Federal Habeas Proceedings [Case No.: 3:09-CV-104, Doc. 233; Case No.: 3:09-CV-404, Doc. 199] is **GRANTED in part**, and it is **DENIED in part**. Petitioner's motion [Case No.: 3:09-CV-104, Doc. 233] is **GRANTED** to the extent that he seeks a stay of his capital habeas corpus proceeding filed under 28 U.S.C. § 2254. His capital habeas corpus proceeding, therefore, is **STAYED**, and his capital habeas corpus petition is **HELD** in abeyance pending further order of the Court. Petitioner's motion [Case No.: 3:09-CV-404, Doc. 199], however, is **DENIED** to the extent that he seeks a stay of his non-capital habeas corpus proceeding filed under 28 U.S.C. § 2254.

In addition, the Court recognizes that the duration of the stay is dependent on the resolution of Petitioner's *Atkins* claim in state court. Still, a stay may not be indefinite or without reasonable time limits. *Rhines*, 544 U.S. at 278. The Court, therefore, conditions the stay of Petitioner's capital habeas corpus proceeding as follows:

- Petitioner **SHALL** continue to file status reports with the Court every **ninety (90) days**, in which he apprises it of the progress of his state-court proceedings, as the Court previously ordered [*See* Case No.: 3:09-CV-104, Doc. 230]; and

25

- Petitioner **SHALL** notify the Court of the outcome of his petition that is pending in the Circuit Court for Blount County within **seven (7) days** of the trial court's decision.

**IT IS SO ORDERED.**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

26